Peter **BERNARD** and James Randolph, etc., Plaintiffs,

v.

**GALEN GROUP, INC.,** a Delaware Corporation, et al., Defendants.

No. Civ. 0101 (DC).

United States District Court, S.D. New York.

Nov. 1, 1995.

Donald L. Cornwell, Los Angeles, CA, Richards Spears Kibbe & Orbe, by Donna I. Dennis, New York City, for Bernard and Randolph.

Seward & Kissel, by Mark J. Hyland, New York City, for Galen Group, Inc.

Kraver & Levy, LLP, by David M. Levy, New York City, for Jay Perler.

Graubard Mollen Horowitz Pomeranz & Shapiro, by Jacqueline Denmark, New York City, for Philip Bodner.

Woodcock Washburn Kurtz Mackiewicz & Norris, by Dale M. Heist, Laura Genovese Miller, Philadelphia, PA, for Gilbert defendants.

Ronald Cowley, pro se.

John Flock, Kenyon & Kenyon, New York City, Receiver for Applied Axiomatics, Inc.

## MEMORANDUM DECISION AND ORDER

CHIN, District Judge.

Before the Court are the requests of certain of the defendants for sanctions against Donald L. Cornwell, Esq., lead counsel for plaintiffs, for violating the confidentiality provisions governing the Court's Mediation Program (the "Mediation Program"). Following my referral of the case to the Mediation Program and the commencement of the me-diation process, Mr. Cornwell wrote me a letter disclosing, among other things, the terms of certain settlement offers (including specific dollar amounts) that had been made during the mediation process. Since these disclosures clearly violated my order referring the matter to mediation as well as the Court's guidelines governing the Mediation Program, sanctions will be assessed.

## BACKGROUND

### A. The Mediation Program

The Mediation Program was established in January 1992 as part of the Court's Civil Justice Expense and Delay Reduction Plan (the "Plan") adopted in December 1991. As described in the Guide to the Plan (the "Guide"):

> Mediation is a *confidential* ADR process in which a disinterested third party directs settlement discussions but does not evaluate the merits of either side's position or render any judgments. By holding meetings, defining issues, defusing emotions and suggesting possibilities of resolution, the mediator assists the parties in reaching their own negotiated settlement. The main benefit of mediation is that it can produce creative solutions to complex disputes often unavailable in traditional litigation.

(Guide, Section V, paragraph A(1)) (emphasis added).

The mediators in the Mediation Program are members of the bar who serve *pro bono* as a service to the Court. (Guide, Section V, paragraph A(3)).

Mediation sessions are subject to confidentiality provisions set forth in the Guide. Paragraph 5 of Section V, provides:

> Discussions at the mediation conference, including any statement made by any party, attorney or other participants, should be confidential and not reported, recorded, placed in evidence, *made known to the assigned judge,* or construed for any purpose as an admission. No party should be bound by anything done or said at mediation conferences unless a settlement is reached.

(Guide, Section V, paragraph A(5)) (emphasis added).

As of April 1995, 470 of the 590 cases that had gone through the Mediation Program had been settled. Daniel Wise, *Dispute Resolution, Discovery Projects Set*, N.Y.L.J., July 19, 1995, at 1, 2. Hence, after nearly three years of operation, mediators in the Mediation Program had settled 80% of the cases referred to them. *Id.* at 2. Indeed, 50% of the cases that had been classified as "standard" or "complex" that had been submitted for mediation were resolved within one year. *Id.* at 2.

### B. Procedural History

This copyright, trademark and patent case was commenced on January 6, 1995. On January 17, 1995, plaintiffs filed a motion for a preliminary injunction and the appointment of a receiver.

Mr. Cornwell, who is not a member of this Court, moved for admission *pro hac vice.* On February 15, 1995, I granted the motion and gave Mr. Cornwell leave to appear *pro hac vice.*

An evidentiary hearing was held on plaintiffs' preliminary injunction motion on February 23 and 24 and March 17, 1995, and at the conclusion of the hearing on March 17th, I granted the motion, ruling from the bench. An order formalizing the preliminary injunction was issued on March 28, 1995, and, following submissions from the parties and an additional evidentiary hearing on April 10, 1995, the preliminary injunction was modified on April 12, 1995. At the hearing on April 10, 1995, I appointed John Flock, Esq. as receiver for Applied Axiomatics, Inc.

### C. Referral of the Case to Mediation

By letter dated June 29, 1995, defendants Galen Group, Inc. ("Galen"), Doyle, Cowley, Bodner, Perler and Urbaniak requested that this case be referred for mediation pursuant to the Mediation Program. The Gilbert defendants joined in the request. Plaintiffs, however, objected; Mr. Cornwell submitted a letter to the Court dated June 30, 1995 stating that "[p]laintiffs do not feel that this case is an appropriate one for mediation."

On July 7, 1995, I overruled plaintiffs' objections and referred the case to mediation. On July 10, 1995, I issued an order directing the Clerk of the Court to process the case for mediation. The order stated in part:

The entire mediation process is confidential. The parties and the Mediator may not disclose information regarding the process, including settlement terms, to the court or to third persons unless all parties otherwise agree. The identity of the Mediator is not to be disclosed to the court.

On or about August 18, 1995, the parties were sent a "Notice of Selection of Mediator" (the "Notice"), which was issued by the Clerk of the Court. The Notice stated:

Pursuant to order of this court the entire mediation process is confidential. The parties and the Mediator may not disclose information regarding the process, including settlement terms, to the court or to third persons unless all parties otherwise agree. The identity of the Mediator is not to be disclosed to the court.

It is not clear from the record whether Mr. Cornwell received my July 10th order (although it was docketed and filed). It is clear, however, that he received the Notice, which reiterates, essentially verbatim, the confidentiality provision of my July 10th order.

A mediation session was held with the mediator on August 29, 1995. As Mr. Cornwell acknowledges, the mediator advised the parties at the beginning of the session that the proceedings were to be kept confidential. A second session was held, by conference call, on September 8, 1995.

By letter dated September 18, 1995, Mark J. Hyland, Esq. of Seward & Kissel, who was then acting as "mediation counsel" for certain defendants whose prior counsel I had permitted to withdraw from the case, requested that defendant Galen be given additional time in which to find counsel of record. Galen asked for such an extension of time until October 6, 1995, which Mr. Hyland advised was when "the next mediation session [was]

scheduled in the action." That was Mr. Hyland's only reference to the mediation.[1]

By letter dated September 22, 1995, local counsel for plaintiffs wrote a letter objecting to the request for an extension of time. In the letter, local counsel also wrote:

We are also somewhat concerned that Mr. Hyland's reference to an October 6 mediation date provides the wrong impression with respect to the status of the parties' settlement discussions. The parties and their respective counsel attended one mediation session on August 29. Despite the mediator's substantial efforts, *the defendants failed to make any serious settlement offer.* The mediation session unfortunately proved to be exactly what plaintiffs had feared, a very expensive waste of time for all concerned, particularly given the travel expenses incurred for plaintiff Bernard and Mr. Cornwell to attend from out of state.

Counsel for all parties had a further telephonic conference regarding the settlement *(with the mediator Mr. Gibson on the line )* on September 8. Although the defendants modified their prior settlement offer slightly, this conference did not significantly narrow the parties' differences. In an attempt to bridge the substantial gap between the parties, the plaintiffs made a detailed written settlement proposal to the defendants on September 13. The defendants have not responded as of this date.

(Letter dated 9/22/95 from Donna I. Dennis, Esq. to the Court) (emphasis added).[2] Ms. Dennis requested that, because of the travel expenses that would be involved, "the mediation office excuse plaintiffs from any further requirement to appear for formal mediation sessions." *(Id.).*

Ms. Dennis's letter drew responses from all defense counsel in the case. Mr. Hyland wrote a letter dated September 27, 1995, which stated in part as follows:

Thus far we have had two mediation sessions, one in person and one via telephone conference. *While defendants believe they have offered more than is justified or reasonable and have done everything they can to resolve this matter, the parties still remain far apart.* At the same time, the mediator has offered fresh insights, progress has been made, and we believe that there could be no possible negative consequence to a continuation of the mediation process, particularly since that process has not delayed the action....

(Letter dated 9/27/95 from Mark J. Hyland, Esq. to the Court) (emphasis added).

Counsel for Perler wrote a letter opposing plaintiffs' request to terminate the mediation, noting that "the [mediation] process has been valuable." (Letter dated 9/27/95 from David M. Levy, Esq. to the Court). Finally, counsel for the Gilbert defendants wrote to join in the request to keep the mediation process open, noting that "[t]he Gilbert defendants agree that the mediation process should continue." (Letter dated 9/28/95 from Laura Genovese Miller, Esq. to the Court).

In view of the flurry of letters, the third mediation session that had been scheduled for October 6, 1995 was cancelled pending a decision by me on whether any additional sessions were to be held.

### D. *Plaintiff's Lead Counsel's Disclosures*

On October 2, 1995, I received a letter dated September 29, 1995 from Mr. Cornwell. The letter charged that "Defendants Have Deliberately Misrepresented The Settlement Efforts Made To Date." (Letter dated 9/29/95 from Donald L. Cornwell, Esq. to the Court at 2). It further contended that defendants, in "claim[ing] that they have attempted in good faith to settle," had made "an outrageous attempt to mislead the Court." *(Id.).* Mr. Cornwell further asserted that "[w]hile plaintiffs had hoped to avoid embroiling the Court in the details of the

---

1. Seward & Kissel has now formally appeared as counsel of record for Galen.

2. Counsel for defendant Perler also submitted a letter dated September 22, 1995. In that letter, counsel made a brief reference to the mediation:

"Notwithstanding defendants' unyielding efforts to formulate a settlement proposal which is acceptable to plaintiffs, it appears that the mediation process is likely to fail." (Letter dated 9/22/95 from David M. Levy, Esq. to the Court).

parties' settlement discussions, the recent correspondence from defendants' counsel compels plaintiffs to do so in order to set the record straight." (*Id.*).

Mr. Cornwell then proceeded in his letter to disclose the terms of two settlement offers made by defendants during the mediation process, including specific dollar amounts. (*Id.*). He also disclosed a proposed offer that plaintiffs had made during the mediation process. (*Id.* at 3). He appended to his letter a copy of a memorandum that he had sent to defendants as well as to the mediator detailing, among other things, the terms of plaintiffs' settlement proposal. (*Id.* & Exh. A thereto). Mr. Cornwell also disclosed the full name of the mediator (*id.* at 3)[3] as well as statements (albeit non-substantive ones) purportedly made by the mediator during the mediation process. (*Id.*, pp. 3–4).

Mr. Cornwell's disclosures drew the present requests for sanctions from Galen and the Gilbert defendants. (Letter dated 10/12/95 from Mark J. Hyland, Esq. to the Court; Letter dated 10/12/95 from Dale M. Heist, Esq. to the Court). Although defendant Perler did not explicitly request sanctions, he also objected to what his counsel described as Mr. Cornwell's "deliberate violation of the contemplated confidentiality surrounding the mediation process." (Letter dated 10/11/95 from David M. Levy, Esq. to the Court).

Mr. Cornwell responded as follows:

The Order received from the Mediation Office which the defendants accuse me of violating states in pertinent part as follows: 'parties ... *may not disclose information concerning the process,* including the settlement terms, to the court or third persons, *unless all parties otherwise agree.*' (Emphasis added). It is defendants who chose to inform the Court about the mediation process in violation of this Order and deliberately misrepresented the parties' respective settlement positions to

the Court. They have no standing to complain because I provided the Court with the evidence which revealed their attempted fraud upon this Court.

(Letter dated 10/16/95 from Donald L. Cornwell, Esq. to the Court). In particular, Mr. Cornwell referred to the letters from defense counsel of September 22, September 27 and September 28, 1995. He contended that by making certain representations to the Court, defendants had "impliedly waived any confidentiality rights they may have had." (*Id.*).

At a conference on October 20, 1995, in response to my questions, Mr. Cornwell acknowledged that he received the "mediation order" (*i.e.*, the Notice), but he stated that "I didn't pay attention to it, except to confirm the schedule." (Tr. 3; *see also* Tr. 4). He stated further, however, that "I was aware from what Gibson [the mediator] said from the beginning, the mediation, unless the parties consented otherwise, the mediation was generally confidential." (Tr. 3; *see also* Tr. 5). He reiterated his position that he felt he had no choice, in view of defendants' letters to the Court, but to disclose "exactly what the status of the [settlement] discussions were." (Tr. 3–4; *see also* Tr. 5–6).

As to disclosing the identity of the mediator, Mr. Cornwell stated that "[t]he fact that the name of the mediator is not to be disclosed is something I didn't know about until you [the Court] mentioned it right now." (Tr. 6).[4] He further stated that he did not "see how the name of the mediator would make any difference." (*Id.*).

### DISCUSSION

Two issues are presented: (1) whether Mr. Cornwell violated my order and the confidentiality provisions applicable to cases referred to the Mediation Program, and (2) if so, what sanction, if any, should be assessed.

■ As to the first issue, Mr. Cornwell's only defense is that defendants purportedly

---

**3.** If the only disclosure made by Mr. Cornwell had been the full name of the mediator, I would be less troubled, since defendants did not object when Ms. Dennis disclosed the last name of the mediator. Mr. Cornwell's disclosures, however, went much further.

**4.** Since the Notice and the Guide both explicitly state that the name of the mediator may not be disclosed to the Court, it would appear from Mr. Cornwell's statement that he did not even bother to read them even after the requests for sanctions were made.

opened the door. I disagree. In fact, if anyone opened the door, it was plaintiffs themselves when plaintiffs' local counsel wrote to the Court on September 22, 1995. Prior to that date, the only reference to the mediation was an innocuous reference in Mr. Hyland's September 18th letter noting that the next mediation session was scheduled for October 6th. In her September 22nd letter, however, Ms. Dennis referred to the mediator by name (albeit his last name only) and stated that during the mediation "defendants failed to make any serious settlement offer." (Letter of 9/22/95 from Donna I. Dennis, Esq. to the Court).[5]

It was in response to these comments and what they perceived as a request to terminate the mediation that defense counsel wrote their letters to the Court. (Letter dated 9/27/95 from Mark J. Hyland, Esq. to the Court; Letter dated 9/27/95 from David M. Levy, Esq. to the Court; Letter dated 9/28/95 from Laura Genovese Miller, Esq. to the Court). Moreover, defense counsel did not, in any of their letters, disclose the identity of the mediator or any statements that he made or the specifics of any settlement offers or demands.[6] There was nothing in any of defense counsel's letters to the Court that could be deemed a waiver of the confidentiality provisions applicable to the Mediation Program, nor did any of the statements in any of the letters justify the disclosures that Mr. Cornwell made.[7]

Mr. Cornwell's contention that defendants opened the door ignores the sequence of the correspondence. Moreover, his charges that defendants or their counsel have tried to mislead me about the mediation process and that they have tried to defraud the Court are not only wrong but irresponsible. The worst that can be said about the letters submitted by defendants is that the letters denied plaintiffs' suggestions that defendants were not mediating in good faith.

Even if Mr. Cornwell genuinely believed that he needed "to set the record straight," his disclosures were not justified. Even assuming the door had been opened (by Ms. Dennis's disclosures and defendants' responses thereto), it was open only a crack. Mr. Cornwell threw the door wide open. He should not have advised the Court of the specific dollar amounts that defendants had offered within the confines of the mediation proceeding under the belief that any offers would be kept confidential from the Court and third parties.

Accordingly, I find that Mr. Cornwell has violated my order as well as the confidentiality provisions applicable to cases referred to the Mediation Program.

■ The second issue, then, is what, if any, sanction should be imposed on Mr. Cornwell. There is no case law on the issue of the breach of the confidentiality provisions applicable to the Mediation Program. In fact, the Court is advised by the Mediation Office that those confidentiality provisions have *never* been intentionally breached—that the only reported disclosures to date have been inadvertent or innocent disclosures made after a case had been settled, such as when a party identified the mediator in seeking to acknowledge his or her efforts.

The Second Circuit, however, has discussed the importance of confidentiality provisions in another alternative dispute resolution context: pre-argument conferences held

---

**5.** Both the disclosure of the mediator's last name and the comment regarding defendants' purported failure to make "any serious settlement" offer violated the confidentiality provisions, although not to the same degree as did Mr. Cornwell's disclosures. Defendants have not, however, sought sanctions with respect to local counsel's September 22nd letter.

**6.** Indeed, Mr. Cornwell's reliance on a September 28th letter (*see* Letter dated 10/16/95 from Donald L. Cornwell, Esq. to the Court at 1) is inexplicable, since the only September 28th letter is the one from counsel for the Gilbert defendants in which the *only* reference to the media-tion is the statement that "[t]he Gilbert defendants agree that the mediation process should continue." (Letter dated 9/28/95 from Laura Genovese Miller, Esq. to the Court).

**7.** The strongest statement made by defendants was Mr. Hyland's statement in his September 27th letter that "defendants believe they have offered more than is justified or reasonable and have done everything they can to resolve this matter." While this statement was also ill-advised, in view of Ms. Dennis's statement that "defendants failed to make any serious settlement offer," I can understand why Mr. Hyland made it.

pursuant to the Second Circuit's Civil Appeals Management Plan for purposes of seeking the resolution of cases on appeal. The Court observed in that context as follows:

> It is essential to the proper functioning of the Civil Appeals Management Plan that all matters discussed at these conferences remain confidential. The guarantee of confidentiality permits and encourages counsel to discuss matters in an uninhibited fashion.... If participants cannot rely on the confidential treatment of everything that transpires during these sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute. This atmosphere if allowed to exist would surely destroy the effectiveness of a program....

*Lake Utopia Paper Ltd. v. Connelly Containers, Inc.,* 608 F.2d 928, 930 (2d Cir.1979), *cert. denied,* 444 U.S. 1076, 100 S.Ct. 1023, 62 L.Ed.2d 758 (1980). These considerations apply with equal force to this Court's Mediation Program. Participants in the Mediation Program rely on the understanding that all matters discussed during the mediation process will be kept confidential, and the breach of the applicable confidentiality provisions threatens the integrity of the entire Program.

Plaintiffs were opposed to mediation from the outset. When notified of the assignment of a mediator, plaintiff's lead counsel did not even bother to read the Notice that incorporated the Court's order that the proceedings be kept confidential.[8] After just two sessions (only one of which was in person), plaintiffs sought to curtail the mediation. Ignoring the mediator's oral reminder that the proceedings were to be kept confidential, plaintiff's lead counsel disclosed the details of the mediation. He now purports to justify his actions by grossly mischaracterizing defense counsel's letters, ignoring the clear sequence of the correspondence, and belittling the re-

quirement that the identity of the mediator be kept confidential.

I can only conclude, under these circumstances, that Mr. Cornwell violated my order and the confidentiality provisions wilfully and deliberately, that he did so in an effort to undermine the mediation process in this case, and that the violation was serious and egregious. Accordingly, sanctions are appropriate.

### CONCLUSION

For the reasons set forth above, defendants' requests for sanctions against Mr. Cornwell are granted. Mr. Cornwell is hereby fined $2,500, to be paid within ten days hereof to the Clerk of the Court. The funds shall be applied by the Clerk of the Court to the operating expenses of the Mediation Program. Mr. Cornwell may not accept reimbursement from his clients.

SO ORDERED.

---

8. What is particularly galling about Mr. Cornwell's failure to read the Notice and his subsequent breach of the confidentiality provisions is

that he is not a member of this Court but has been granted the privilege of appearing *pro hac vice.*