Shari **FIELDS–D'ARPINO, Plaintiff,**

v.

**RESTAURANT ASSOCIATES, INC. and Maureen Hunt, Defendants.**

**No. 98 Civ. 7902(WHP).**

United States District Court, S.D. New York.

March 24, 1999.

---

Thomas S. Rosenthal, Law Offices of Thomas S. Rosenthal, New York City, for Plaintiff.

Richard Schaeffer, Dornbush Mensch, Mandelstam & Schaeffer, LLP, New York City, for Defendants.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

This action involves claims of gender and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, N.Y. Human Rights Law § 296 and Title 8 of the Administrative Code of the City of New York. By letter memorandum dated January 15, 1999, plaintiff Shari Fields–D'Arpino seeks an order disqualifying the law firm of Dornbush Mensch Mandelstam & Schaeffer, LLP (the "Dornbush firm") from serving as counsel for defendants Restaurant Associates, Inc. and Maureen Hunt in this action. By letter memorandum dated January 22, 1999, defendants argue that disqualification of the Dornbush firm is unwarranted. Unless otherwise noted, the following facts are undisputed.

In January 1997, defendant Restaurant Associates promoted plaintiff to the position of Director of Recruitment for the company's Human Resources Department. On or about February 3, 1998, plaintiff wrote a memorandum to Lawrence B. Jones, Esq., in-house counsel for Restaurant Associates, advising him that plaintiff's supervisor, Maureen Hunt, was treating her unfairly. The plaintiff contends that the memorandum, which is not before the Court, stated her belief that Ms. Hunt was treating her differently because of plaintiff's pregnancy.

After Mr. Jones received plaintiff's memorandum, he contacted the Dornbush firm, outside counsel for Restaurant Associates, and spoke with Richard Schaeffer, Esq., a member of the firm. Mr. Schaeffer arranged to have another attorney at the firm, Cody Fitzsimmons, Esq., meet with the parties in an effort to resolve the dispute. Mr. Fitzsimmons contacted plaintiff and invited her to attend a meeting at

his offices for this purpose. Plaintiff agreed.

The meeting occurred on February 5, 1998. Plaintiff was aware that the Dornbush firm served as Restaurant Associates' outside counsel, and she asked Mr. Fitzsimmons if Wendy Fields, Esq., her aunt and a partner in the Washington D.C. law firm of Katten Muchin & Zavis, could participate in the meeting via speaker phone. Mr. Fitzsimmons agreed. The meeting lasted between two and three hours. Ms. Hunt did not attend; only the plaintiff, Mr. Fitzsimmons and a paralegal from the Dornbush firm were physically present at the meeting.

Although the record is unclear, it appears that plaintiff filed an administrative charge of discrimination with the EEOC at some point subsequent to the February 5, 1998 meeting. By letter dated April 15, 1998, the Dornbush firm advised the EEOC that it represented Restaurant Associates in the matter. The letter submission to the EEOC refers to the February 5 meeting and states in relevant part:

> [O]n Thursday, February 5, 1998 and Friday, February 6, 1998, respectively, RA [Restaurant Associates] arranged for Ms. Fields–D'Arpino and Ms. Hunt, at their discretion, to meet separately with [Restaurant Associates'] outside counsel as a neutral third party in an additional effort to resolve their differences.
>
> ... Ms. Fields–D'Arpino recounted her version of the disagreements that she had with Ms. Hunt on January 29 and 30, 1998, noting that prior to those dates she loved her job and enjoyed working with Ms. Hunt. Specifically, consistent with her letter to Mr. Jones of February 3, 1998 (which Wendy Fields, Esq. indicated that she assisted Ms. Fields–D'Arpino in writing), Ms. Fields–D'Arpino in no way stated or

even implied during the meeting that she believed that she was being discriminated against or mistreated as a result of her pregnancy.

Pl.'s Letter Mem. at 2–3. The letter was apparently signed by Mr. Schaeffer.[1] Plaintiff states, and defendants do not dispute, that Mr. Schaeffer's letter repeatedly characterizes his firm's role at the meeting as that of "neutral, third party." Pl.'s Letter Mem. at 3n.1. In their letter memorandum to the Court dated January 22, 1999, defendants state that they "intend to call Mr. Fitzsimmons as a witness at trial so that he may testify as to the purpose and content of the February 5, 1998 meeting." Def.s' Letter Mem. at 2.

### Discussion

Plaintiff argues that the Dornbush firm must be disqualified as counsel of record for defendants in this action based on EC 5–20, which provides:

> A lawyer is often asked to serve as an impartial arbitrator or mediator in matters which involve present or former clients. The lawyer may serve in either capacity if he first discloses such present or former relationships. *A lawyer who has undertaken to act as an impartial arbitrator or mediator should not thereafter represent in the dispute any of the parties involved.*

N.Y.Code of Professional Responsibility EC 5–20 (McKinney's 1999) (emphasis added). Plaintiff also relies on Cannon 9 of the New York Code, which provides that a "lawyer should avoid even the appearance of professional impropriety", and DR 1–102A(4), which states that a lawyer shall not "engage in conduct involving ... deceit, or misrepresentation." In this regard, plaintiff argues that she was lured into disclosing confidences to the Dornbush firm because it held itself out as a "neutral" mediator.[2]

---

**1.** Neither party submitted a copy of the April 15, 1998 letter to the EEOC in connection with the instant application. However, defen-

dants do not dispute plaintiff's account of its contents.

**2.** These ethical provisions are not binding on federal courts in New York. *See Conigliaro v.*

Defendants dispute that Mr. Fitzsimmons acted as an impartial mediator as contemplated by EC 5–20 because "his neutral role in attempting to resolve Plaintiff's concerns was much less formal." Def.s' Letter Mem. at 3. In addition, defendants argue that since Mr. Fitzsimmons has voluntarily withdrawn from representing defendants in this action, disqualification of the entire Dornbush firm is unwarranted. Defendants also point out that plaintiff was represented by her own counsel at the February 5 meeting. Finally, defendants submit that the Dornbush firm never misrepresented to plaintiff either its "identity or [ ] intentions." Defs.' Letter Mem. at 4–5.

▮ Notwithstanding that the Dornbush firm did not conceal or misrepresent its relationship with Restaurant Associates, the record is clear that the firm held itself out to plaintiff as an impartial mediator for purposes of conducting the February 5 meeting. The Court rejects defendants' argument that EC 5–20 is inapplicable because the firm's role in the mediation effort was "informal." EC 5–20 does not draw such a distinction and the Court declines to do so. Mediation is inherently an informal approach to dispute resolution that lacks the exacting procedural rules of the judicial process.

As mentioned above, Mr. Fitzsimmons has voluntarily withdrawn from representing defendants in this action. *See* Defs.' Letter Mem. at 3. That decision was well advised since his continued representation of Restaurant Associates is squarely proscribed by EC 5–20. The only remaining question for this Court to determine is whether disqualification of the Dornbush firm is warranted. ˙

▮ Motions to disqualify counsel are generally viewed with disfavor because "disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and [because] disqualification motions are often interposed for tactical reasons." *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979). "[A] court's ultimate objective in weighing disqualification questions is to ensure that the balance of presentations in a litigation will not be tainted by improper disclosures ... Courts have been directed to take a 'restrained approach that focuses primarily on preserving the integrity of the trial process.'" *Huntington v. Great Western Resources, Inc.*, 655 F.Supp. 565, 571 (S.D.N.Y.1987 (Sand, J.) (citations omitted). A party seeking disqualification must meet a high standard of proof before disqualification will be granted. *See Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983).[3]

Although no case law exists involving disqualification of a law firm under EC 5–20, a number of cases are instructive. Plaintiff relies primarily on *Heelan v. Lockwood*, 143 A.D.2d 881, 533 N.Y.S.2d 560 (2d Dep't 1988), where an attorney held himself out as a "neutral mediator to all the parties" in pre-litigation settlement discussions. *Heelan*, 533 N.Y.S.2d at 561. The attorney also represented in a letter containing the terms of a proposed settlement agreement that he would step aside if the negotiations did not bear fruit. Later, when settlement discussions proved futile, the attorney reneged on his promise and accepted employment as trial counsel for one of the parties.

The Appellate Division, Second Department held that the attorney and his law firm should be disqualified. While the

---

*Horace Mann School*, 1997 WL 189058, *2 n.1 (S.D.N.Y. Apr.17, 1997). When ruling on a disqualification motion, courts in this circuit have considered both the New York Code of Professional Responsibility as well as the pronouncements of the American Bar Association. *See Kubin v. Miller*, 801 F.Supp. 1101, 1113–14 (S.D.N.Y.1992); *Adler & Shepard v.*

*Script Systems, Inc.*, 1992 WL 51499, at *2 (Mar. 9, 1992).

3. That being said, the Court notes that the disruption and delay attendant to displacing an attorney of record is mitigated here because discovery has not begun.

court did not mention EC 5–20, it ruled that "[s]ince counsel admittedly participated in numerous conversations with Heelan and represented that his involvement would be limited to settlement negotiations, his subsequent acceptance of employment with the respondents after the commencement of litigation creates, under these circumstances, an appearance of impropriety which necessitates his withdrawal from the case." *Heelan*, 533 N.Y.S.2d at 562.

■ Defendants attempt to distinguish *Heelan* by arguing that the Dornbush firm made no misrepresentations to plaintiff. However, an affirmative misrepresentation is not necessary to trigger EC 5–20, nor is it a prerequisite to a finding of "an appearance of impropriety." Defendants' argument, in essence, is that it never promised plaintiff or her counsel that it would *not* represent the defendants if litigation ensued. Under the circumstances, where the Dornbush firm held itself out to plaintiff and her counsel as a neutral, third-party mediator, that distinction rings hollow.

Two other courts have also disqualified law firms when one of the firm's attorneys previously served as a mediator in the litigated matter. In *Poly Software International, Inc. v. Su*, 880 F.Supp. 1487 (D.Utah 1995), two opposing parties had previously agreed to mediate a copyright action against them involving software products that they were marketing. The mediation was successful and the action settled. In the subsequent *Poly Software* action those same two parties had become adversaries, and the mediator-attorney from the earlier matter sought to represent one of them. The copyright infringement claims asserted in *Poly Software* involved the same software that had been the subject of the mediated action.

Drawing on applicable State disciplinary rules,[4] the district court disqualified both the attorney and his law firm, holding that "[w]here a mediator has received confidential information in the course of mediation, that mediator should not thereafter represent anyone in connection with the same or a substantially factually related matter unless all parties to the mediation proceeding consent after disclosure." *Poly Software*, 880 F.Supp. at 1494. In distilling the appropriate ethical rule, the court cogently observed:

> [T]he mediator is not merely charged with being impartial, but with receiving and preserving confidences in much the same manner as the client's attorney. In fact, the success of mediation depends largely on the willingness of the parties to freely disclose their intentions, desires, and the strengths and weaknesses of their case; and upon the ability of the mediator to maintain a neutral position while carefully preserving the confidences that have been revealed.
>
> . . .
>
> If parties to mediation know that their mediator could someday be an attorney on the opposing side in a substantially related matter, they will be discouraged from freely disclosing their position in the mediation, which may severely diminish the opportunity for settlement.

*Poly Software*, 880 F.Supp. at 1494. The court held that the attorney's role as a mediator gave him an "unfair advantage" that tainted the litigation and imputed his disqualification to the members of his law firm.[5] *Id.* at 1495.

---

4. The district court cited Utah Prof. Conduct Rule 1.12(a), which provides that "a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator or law clerk to such a person, unless all parties to the proceeding consent after disclosure."

5. In doing so, the court relied on Utah Prof. Conduct Rule 1.10(a), which states: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8(c), 1.9 or 2.2." *See Poly Software*, 880 F.Supp. at 1495. The enumerated provisions concern an attorney's receipt of confidential information.

More recently, in *McKenzie Constr. v. St. Croix Storage Corp.*, 961 F.Supp. 857 (D.Vi.1997), the court disqualified both an attorney and her law firm under similar circumstances. The court rejected the firm's argument that it had created a "cone of silence" around the attorney in question, and found that the firm's disqualification was "necessary to safeguard the integrity of the ongoing litigation and to eliminate the threat that the proceedings w[ould] be tainted." *McKenzie*, 961 F.Supp. at 862.

Two additional cases, *Schwed v. General Electric Co.*, 990 F.Supp. 113 (N.D.N.Y. 1998), and *Marshall v. State of New York Div. of State Police*, 952 F.Supp. 103 (N.D.N.Y.1997), are also instructive and warrant brief discussion. In both cases, law firms were disqualified because one of their attorneys had access to privileged information during a prior representation of an adverse party. The courts noted that under DR 5–105(D), a presumption arises that privileged information and confidences will be shared with other attorneys within a law firm. *See Marshall*, 952 F.Supp. at 110. Although that presumption is rebuttable, *see Cheng v. GAF Corp.*, 631 F.2d 1052, 1056 (2d Cir.1980), *vacated on other grounds*, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981); *Marshall*, 952 F.Supp. at 110–11, the firms in *Schwed* and *Marshall* failed to avoid disqualification because neither one implemented effective screening procedures. Such procedures must be closely scrutinized and ultimately rejected if they are subject to doubt. *See Marshall*, 952 F.Supp. at 111–12 (collecting cases).

The Dornbush firm has not even attempted to implement screening procedures that would prevent its attorney-mediator, Mr. Fitzsimmons, from sharing confidential information disclosed by the plaintiff during the mediation with other attorneys in the firm. On the contrary, in the administrative proceeding before the EEOC, the Dornbush firm attempted to exploit what Mr. Fitzsimmons learned during the mediation in order to rebut plaintiff's charge of discrimination. Even more troubling, the Dornbush firm intends to use Mr. Fitzsimmons as a witness at trial with respect to the purpose and content of the mediation. *See supra*, p. 4. The Court will not permit the Dornbush firm to continue down this path. Under these circumstances, the Court finds that the presence of the Dornbush firm in this action perpetuates an unacceptable appearance of impropriety and raises the spectre that the litigation will be tainted by one side's "unfair advantage." *Cheng*, 631 F.2d at 1059.

### *Conclusion*

With the heavy caseloads shouldered today by federal and State courts alike, mediation provides a vital alternative to litigation. The benefits of mediation include its cost-effectiveness, speed and adaptability. Successful mediation, however, depends upon the perception and existence of mutual fairness throughout the mediation process. In this regard, courts have implicitly recognized that maintaining expectations of confidentiality is critical. *See Bernard v. Galen Group, Inc.*, 901 F.Supp. 778, 782–84 (S.D.N.Y.1995) (sanctioning attorney for intentionally disclosing to the court settlement offers made in mediation proceeding); *Cohen v. Empire Blue Cross & Blue Shield*, 178 F.R.D. 385 (E.D.N.Y. 1998) (sanctioning attorney for violating confidentiality provisions of court-annexed mediation program).

Congress' view on the importance of alternative dispute resolution, and the need for confidentiality, is equally clear. The Alternative Dispute Resolution Act of 1998 requires each federal district court to au-

---

This rule is quite similar to N.Y. Jud. Law § DR 5–105(D), which provides: "While lawyers are associated in a law firm, none of them shall knowingly accept or continue employment when any one of them practicing alone would be prohibited from doing so under DR 5–101(A), DR 5–105(A), (B) or (C), DR 5–108, or DR 9–101(B) except as provided therein."

thorize, by local rule, the use of alternative dispute resolution processes in all civil actions. *See* 28 U.S.C. § 651. The Act requires that ADR processes be confidential and prohibits disclosure of confidential dispute resolution communications, though it does not make mediation communications privileged. *See* 28 U.S.C. § 652(d).

■ In instances where public confidence in the Bar would be undermined, "even an appearance of impropriety requires prompt remedial action by the court." *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 565 (2d Cir.1973). In light of the foregoing cases and strong public policy favoring mediation, the Court finds that the appropriate remedial action to be taken here is disqualification of the Dornbush firm. Accordingly, plaintiff's motion is granted and the Dornbush firm is disqualified from representing the defendants in this action.

Further, the Dornbush firm, including its employees, agents and members, is prohibited from discussing or revealing any information to the defendants or their counsel concerning the mediation it conducted with the plaintiff. In addition, neither Mr. Fitzsimmons nor any other attorney at the Dornbush firm will be permitted to testify concerning the mediation at any trial of this action. Finally, the parties are precluded from initiating any discovery with respect to the mediation. These prophylactic measures are necessary to level the playing field in this action and ensure that plaintiff's claims will be fairly adjudicated.

SO ORDERED: