10-2257 (L)
In Re: Teligent, Incorporated

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
_____

August Term, 2010

(Argued: January 11, 2011                    Decided: May 5, 2011)

Docket Nos. 10-2257-bk (L), 10-2411-bk (XAP)
_____

IN RE: TELIGENT, INCORPORATED,

*Debtor,*
_____

SAVAGE & ASSOCIATES, P.C.,

*Plaintiff-Appellant-Cross-Appellee*,

-v.-

K&L GATES LLP,

*Appellee-Cross-Appellant*,

and

ALEX MANDL,

*Defendant-Appellee-Cross Appellee*.
_____

Before: POOLER, WESLEY, and CHIN, *Circuit Judges*.

Appeal and cross-appeal from an order of the United States District Court for the

Southern District of New York (Castel, *J.*) affirming the order of the bankruptcy court

(Bernstein, *C.B.J.*), which denied K&L Gates LLP's ("K&L Gates") motion to lift two protective

orders prohibiting disclosure of communications made during a mediation, and Savage &

Associates, P.C.'s cross-motion to enjoin K&L Gates from raising questions about the validity of

certain provisions of a settlement agreement as a defense to malpractice in a related action.

With respect to the cross-appeal, the protective orders are silent as to when their confidentiality restrictions may be lifted; therefore, disclosure would have been warranted only if the party seeking disclosure had demonstrated (1) a special need for the confidential material it sought; (2) resulting unfairness from a lack of discovery; and (3) that the need for the evidence outweighed the interest in maintaining confidentiality. K&L Gates failed to make the requisite showing, and accordingly, we conclude there was no error in the denial of the law firm's motion.

With respect to the lead appeal, because K&L Gates was, at most, a potential debtor of a debtor of the estate, it could not have been considered a "party in interest" with standing to contest the validity of the settlement agreement when the motion to approve that agreement was pending before the bankruptcy court. There was, therefore, no error in the holding that K&L Gates is not barred from asserting a defense challenging the validity of any provision of the settlement agreement in connection with the related malpractice action currently pending against the law firm. Accordingly, we affirm the order of the district court in its entirety.

**AFFIRMED**.

_____

DENISE SAVAGE, Savage & Associates, P.C., Croton on Hudson, NY, *for Plaintiff-Appellant-Cross-Appellee Savage & Associates, P.C.*

LUBA SHUR (Michael S. Sundermeyer, Mark S. Levinstein, *on the brief*), Williams & Connolly LLP, Washington, DC, *for Appellee-Cross-Appellant K&L Gates LLP*.

ANDREW C. HALL, Hall, Lamb and Hall, P.A., Miami, FL, *for Defendant-Appellee-Cross-Appellee Alex Mandl*.

POOLER, *Circuit Judge.*

Appeal and cross-appeal from an order of the United States District Court for the Southern District of New York (Castel, *J.*) affirming the order of the bankruptcy court (Bernstein, *C.B.J.*), which denied K&L Gates LLP's ("K& L Gates") motion to lift two protective orders prohibiting disclosure of communications made during a mediation, and Savage & Associates, P.C.'s cross-motion to enjoin K&L Gates from raising questions about the validity of certain provisions of a settlement agreement as a defense to malpractice in a related action.

With respect to the cross-appeal, the protective orders are silent as to when their confidentiality restrictions may be lifted; therefore, disclosure would have been warranted only if the party seeking disclosure had demonstrated (1) a special need for the confidential material it sought; (2) resulting unfairness from a lack of discovery; and (3) that the need for the evidence outweighed the interest in maintaining confidentiality. K&L Gates failed to make the requisite showing, and accordingly, we conclude there was no error in the denial of the law firm's motion.

With respect to the lead appeal, because K&L Gates was, at most, a potential debtor of a debtor of the estate, it could not have been considered a "party in interest" with standing to contest the validity of the settlement agreement when the motion to approve that agreement was pending before the bankruptcy court. There was, therefore, no error in the holding that K&L Gates is not barred from asserting a defense challenging the validity of any provision of the settlement agreement in connection with the related malpractice action currently pending against the law firm. Accordingly, we affirm the order of the district court in its entirety.

3

## BACKGROUND

Since the issues are narrow, we recite only as much of the factual background as is necessary to understand the decision.

When Teligent, Inc. ("Teligent") hired Alex Mandl as its CEO in 1996, the company extended Mandl a $15 million loan. The loan was to be due and payable immediately if Mandl resigned his employment without "good reason," but would be automatically forgiven if Teligent terminated Mandl's employment other than for "cause."

Mandl retained the law firm K&L Gates LLP around April 2001 in connection with his potential departure from Teligent. At that time, $12 million was outstanding on the loan. K&L Gates drafted a severance agreement for Mandl that, according to the law firm, "reflect[ed] that Teligent had terminated Mandl other than for Cause effective as of April 27, 2001, thus triggering automatic loan forgiveness."

Less than a month after the parties ratified the severance agreement, Teligent filed for bankruptcy under Chapter 11. Cross-Appellee Savage & Associates, P.C. ("Savage & Associates") was appointed by the bankruptcy court to be the Unsecured Claims Estate Representative. In discharging its duties pursuant to this role, Savage & Associates filed approximately 1,000 adversary proceedings. These adversary proceedings included an action against Mandl, brought under Sections 548 and 550 of Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 548, 550, to recover the balance of the loan. Mandl again retained K&L Gates to represent him in connection with this matter.

The bankruptcy court held a one-day trial after which it concluded that Mandl had resigned before Teligent terminated his employment, and therefore, Mandl was liable for the balance of the loan. *See In re Teligent, Inc.*, 380 B.R. 324, 333-36 (Bankr. S.D.N.Y. 2008). That finding was not appealed.

4

Shortly after the bankruptcy court issued its decision relating to the loan, Mandl retained Greenberg Traurig, LLP ("Greenberg Traurig") as new counsel. Greenberg Traurig then filed a number of motions, including a motion for relief from the judgment based in part on a claim of newly discovered evidence. Around the same time, Savage and Associates commenced a new lawsuit in the Eastern District of Virginia against Mandl, naming as defendants Mandl's wife, Susan Mandl, and ASM Investments LLC ("ASM"), an entity associated with Mandl, and alleging that Mandl had fraudulently transferred certain property through ASM to his wife in order to shelter his assets from creditors.

All parties to the action in Virginia participated in a voluntary mediation in attempt to resolve both the motions before the bankruptcy court as well as the Virginia Action. Greenberg Traurig invited K&L Gates to participate in the mediation, to address Mandl's claim that K&L Gates committed malpractice in the course of representing him during his termination from Teligent and in the resulting adversary proceeding. K&L Gates declined to participate.

In setting up a framework for the mediation, the parties agreed to be bound by the terms of the protective orders routinely employed by the Bankruptcy Court in the Southern District of New York in the context of court-ordered mediation (the "Protective Orders"). The Protective Orders imposed limitations, inter alia, on the disclosure of information relating to the mediation. However, the Protective Orders provided no guidance on when, or if, a party might be entitled to release confidential information connected to the mediation.

Although formal mediation did not result in a settlement, the parties thereafter reached an agreement. In exchange for dismissal of the action in Virginia, Mandl agreed to pay the estate $6.005 million and to commence a malpractice suit against K&L Gates. The terms of the agreement also required Mandl to remit to the estate 50% of the net value of any malpractice recovery. The bankruptcy court approved the settlement pursuant to a motion under Federal

5

Rule of Bankruptcy Procedure 9019. The approval of the settlement is not before us on appeal.

On May 30, 2008, and as required by the settlement, Mandl filed a malpractice action against K&L Gates in the Superior Court of the District of Columbia. During discovery, K&L Gates sought documents relating to "the negotiations leading up to the Settlement Agreement, including all mediation and settlement communications[.]" K&L Gates argued that the discovery was "critical to issues such as causation, mitigation, and damages." In response to K&L Gates's request, Mandl produced certain documents.

When Savage and Associates learned that Mandl had disclosed confidential mediation communications, Denice Savage, the firm's principal, contacted Mandl, insisting that he withhold all documents relating to the settlement agreement. Denise Savage also demanded that K&L Gates destroy or return any such documents in its possession. Both parties complied with these requests.

K&L Gates then filed a motion with the bankruptcy court, seeking to lift the confidentiality provisions of the Protective Orders. The bankruptcy court denied the motion, *see In re Teligent, Inc.*, 417 B.R. 197 (Bankr. S.D.N.Y. 2009), reasoning, among other things, that K&L Gates had not shown a need for *all* mediation communications, though the law firm had sought discovery of the entire universe of documents. *Id.* at 207. The bankruptcy court also noted that its conclusion was "not intended to foreclose K&L's right to argue before the DC court that a specific communication is not covered by the confidentiality provisions of the [Protective] Orders (*e.g.*, it was not made 'during the mediation process'), or that the court should nevertheless order disclosure of a specific communication under applicable law." *Id.* at 209. The bankruptcy court's denial of K&L Gates's motion to lift the confidentiality provisions of the Protective Orders is the subject of the cross-appeal before us.

Savage & Associates opposed the motion to lift the Protective Orders before the bankruptcy court and cross-moved for injunctive relief prohibiting K&L Gates from asserting any defense in the District of Columbia action relating to the mediation of the action filed in Virginia. Specifically, Savage & Associates sought to enjoin K&L Gates from raising as a defense to malpractice that certain provisions in the settlement agreement between Mandl and Savage were invalid. The bankruptcy court denied Savage & Associates' motion for injunctive relief, *see In re Teligent, Inc.*, 417 B.R. 197, 210 (Bankr. S.D.N.Y. 2009), and the district court affirmed, *see In re Teligent Servs., Inc.*, No. 09 Civ. 9674, 2010 WL 2034509 (S.D.N.Y. May 13, 2010). These orders are the subject of the lead appeal before us.

## DISCUSSION

In an appeal from a district court's review of a decision of a bankruptcy court, we conduct an independent and plenary review of the bankruptcy court's decision, accepting the bankruptcy court's findings of fact unless they are clearly erroneous and reviewing its conclusions of law de novo. *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006). Further, we review de novo the bankruptcy court's view of the principles governing who may contest a settlement as a party in interest under Section 1109(b), *In re Refco Inc.*, 505 F.3d 109, 116 (2d Cir. 2007), and we review for abuse of discretion the bankruptcy court's decision not to amend a protective order, *cf. SEC v. TheStreet.Com*, 273 F.3d 222, 228 (2d Cir. 2001) (Fed. R. Civ. P. 26(c) protective order).

## I.    The Cross-Appeal

In this case, the bankruptcy court denied K&L Gates's motion to lift the confidentiality provisions of the Protective Orders based on the court's conclusion that K&L Gates failed to demonstrate a compelling need for the discovery, failed to show that the information was not otherwise available, and failed to establish that the need for the evidence was outweighed by the

7

public interest in maintaining confidentiality. *See generally In re Teligent*, 417 B.R. 197 (Bankr. S.D.N.Y. 2009). The district court affirmed these conclusions. *See In re Teligent Servs., Inc.*, No. 09 Civ. 9647, 2010 WL 2034509 (S.D.N.Y. May 13, 2010). There was no error in this conclusion.

Confidentiality is an important feature of the mediation and other alternative dispute resolution processes. Promising participants confidentiality in these proceedings "promotes the free flow of information that may result in the settlement of a dispute," *In re Grand Jury Subpoena Dated Dec. 17, 1996*, 148 F.3d 487, 492 (5th Cir. 1998), and protecting the integrity of alternative dispute resolution generally, *see. e.g.*, *In re Cnty. of Los Angeles*, 223 F.3d 990, 993 (9th Cir. 2000); *Clark v. Stapleton Corp.*, 957 F.2d 745, 746 (10th Cir. 1992) (per curiam); *Sheldone v. Pa. Tpk. Comm'n*, 104 F. Supp. 2d 511, 517 (W.D. Pa. 2000); *Fields-D'Arpino v. Rest. Assocs., Inc.*, 39 F. supp. 2d 412, 417 (S.D.N.Y. 1999); *Folb v. Motion Pictures Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1170-80 (C.D. Cal. 1998), *aff'd* 216 F.3d 1082 (9th Cir. 2000); *Bernard v. Galen Grp., Inc.*, 901 F. Supp. 778, 784 (S.D.N.Y. 1995). We vigorously enforce the confidentiality provisions of our own alternative dispute resolution, the Civil Appeals Management Plan ("CAMP"), because we believe that confidentiality is "essential" to CAMP's vitality and effectiveness. *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979); *see also Calka v. Kucker Kraus & Bruh*, 167 F.3d 144, 146 (2d Cir. 1999) (per curiam); 2d Cir. app. D, R.. 4 (prohibiting parties in CAMP conferences from advising "unauthorized third parties of discussions or action taken at the conference").

A party seeking disclosure of confidential mediation communications must demonstrate (1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality.

8

*Accord Iridium India Telecom Ltd. v. Motorola, Inc.*, 165 F. App'x 878, 880 (2d Cir. 2005) (summary order) (movant must show "a compelling need or extraordinary circumstances necessary to modify [a] protective order"); *see also In re Anonymous*, 283 F.3d 627, 636-37 (4th Cir. 2002); *cf. TheStreet.Com*, 273 F.3d at 229 ("Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) absent a showing of improvidence in the grant of [the] order or some extraordinary circumstances or compelling need" (alteration in original, internal quotation marks omitted)); *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979) (same). All three factors are necessary to warrant disclosure of otherwise non-discoverable documents.

We draw this standard from the sources relied upon by the learned bankruptcy court, which include the Uniform Mediation Act ("UMA"), the Administrative Dispute Resolution Act of 1996 ("ADRA 1996"), 5 U.S.C. §§ 571 et seq.,[1] and the Administrative Dispute Resolution Act of 1998 ("ADRA 1998"), 28 U.S.C. §§ 651 et seq.[2] Each of these recognizes the importance of maintaining the confidentiality of mediation communications and provides for disclosure in only limited circumstances. For example, ADRA 1996, which applies to federal administrative agency alternative dispute resolution, prohibits disclosure of confidential mediation

---

[1] ADRA 1996 directs district courts to maintain and make available to litigants alternative dispute resolution programs. *See* 28 U.S.C. § 651(b). Although ADRA 1996 left the particulars of those programs to the local rules of each court, *see id.*, it did require courts to "provide for the confidentiality of the alternative dispute resolution processes and . . . prohibit disclosure of confidential dispute resolution communications," *id.* § 652(d).

[2] ADRA 1998 provides the authority for the bankruptcy court's Court Annexed Alternative Dispute Resolution Program, through Local Rule 9019-1 and a series of general orders. *See* 28 U.S.C. § 651(b); Bankr. S.D.N.Y. R. 9019-1; *In re Adoption of Procedures Governing Mediation*, General Order M-390 Amending and einstating M143 and M2-11 (Bankr. S.D.N.Y. Dec. 1, 2009); *see also In re Expansion of General Order M-143 to Include the Use of Early Neutral Evaluation and Mediation/Voluntary Arbitration*, General Order M-211, Amended General Order M-143 (Bankr. S.D.N.Y. Oct. 20, 1999).

communications unless the party seeking disclosure demonstrates exceptional circumstances, such as when non-disclosure would result in a manifest injustice, help establish a violation of law, or prevent harm to the public health or safety. 5 U.S.C. § 574(b)-(c). Relatedly, under the UMA, the party seeking disclosure of confidential mediation communications must demonstrate that the evidence is not otherwise available and that the need for the communications substantially outweighs the interest in protecting confidentiality. UMA § 6(b).

The standards for disclosure under the UMA and the ADRAs are also consistent with the standard governing modification of protective orders entered under Federal Rule of Civil Procedure 26(c). As we explained in *FDIC v. Ernst & Ernst*, 677 F.2d 230 (2d Cir. 1982) (per curiam), once a protective order has been entered and relied upon, "it can only be modified if an 'extraordinary circumstance' or 'compelling need' warrants the requested modification." *Id.* at 232 (quoting *Martindale*, 594 F.2d at 296). In *SEC v. TheStreet.Com*, 273 F.3d 222 (2d Cir. 2001), we further refined this principle, explaining that there is a "strong presumption against the modification of a protective order," and orders should not be modified "absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." *Id.* at 229 (internal quotation marks, alteration, and citations omitted).

Here, as the bankruptcy court observed, K&L Gates has sought a blanket lift of the confidentiality provisions in the Protective Orders. *In re Teligent*, 417 B.R. at 207. However, K&L Gates failed to demonstrate a special or compelling need for *all* mediation communications. *Cf. TheStreet.Com*, 273 F.3d at 229. Indeed, the law firm failed to submit any evidence to support its argument that there was a special need for disclosure of any specific communication. There was, therefore, no error in the bankruptcy court's conclusion that K&L Gates failed to satisfy prong one of the standard governing disclosure of confidential mediation communications.

10

Likewise, the bankruptcy court committed no error in holding that K&L Gates failed to satisfy prong two of the test. As the bankruptcy court explained, the law firm failed to demonstrate a resulting unfairness from a lack of discovery, because the evidence sought by K&L Gates was available through other means, including through responses to interrogatories or depositions. *See In re Teligent*, 417 B.R. at 208. Accordingly, the law firm failed to show that "extraordinary circumstances" warrant disclosure. *Cf. TheStreet.Com*, 273 F.3d at 229.

Finally, because K&L Gates failed to demonstrate a special need for the mediation communications, the law firm did not satisfy prong three of the test, which requires a party seeking disclosure of confidential material to show that its need outweighs the important interest in protecting the confidentiality of the material. As we explained in the context of litigation in *TheStreet.Com*, if "protective orders have no presumptive entitlement to remain in force, parties would resort less often to the judicial system for fear that such orders would be readily set aside in the future." *Id.* at 229-30. It follows that similar concerns arise in the context of mediation. Were courts to cavalierly set aside confidentiality restrictions on disclosure of communications made in the context of mediation, parties might be less frank and forthcoming during the mediation process or might even limit their use of mediation altogether. These concerns counsel in favor of a presumption against modification of the confidentiality provisions of protective orders entered in the context of mediation. Accordingly, we conclude that there was no error in the denial of K&L Gates's motion to lift the confidentiality provisions of the Protective Orders in this case.

## II. The Lead Appeal

Appellant argues principally that K&L Gates should be enjoined from raising, as a defense in the malpractice action in D.C. Superior Court, any arguments relating to the validity of the provisions of the settlement agreement because K&L Gates did not raise its challenge to

the provisions of the settlement agreement when the agreement's approval was pending before the bankruptcy court. Insofar as this argument is premised on Savage & Associates's mistaken conclusion that K&L Gates had standing to challenge the approval of the settlement agreement, we disagree. As the bankruptcy court concluded, K&L Gates could not have appeared before the bankruptcy court to challenge the settlement agreement because K&L Gates lacked both Article III and prudential standing to object to the order, and was not a "party in interest" under 11 U.S.C. § 1109(b). 417 B.R. at 210.[3]

Section 1109 provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." *See* 11 U.S.C. § 1109. Beyond this non-exhaustive list, the term "party in interest" is not further defined in the statute. *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983). "The general theory behind the section is that anyone holding a direct financial stake in the outcome of the case should have an opportunity . . . to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest." Alan Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 1109.01 (16th ed. 2011); *accord FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 284 (7th Cir. 2002); *In re Alpex Computer Corp.*, 71 F.3d 353, 357 (10th Cir. 1995); *In re Hutchinson*, 5 F.3d 750, 756 (4th Cir. 1993). However, courts have long recognized that the meaning of the term "must be determined on an '*ad hoc*' basis," and the categories mentioned in Section 1109 are "not meant to exclude other types of interested parties from the

_____

[3] Because we agree that K&L Gates was not a "party in interest," we do not reach the constitutional or prudential questions.

12

purview of that section." *In re Johns-Manville Corp.*, 36 B.R. 743, 747, 748 (Bankr. S.D.N.Y. 1984), *aff'd*, 52 B.R. 940 (S.D.N.Y. 1985); *accord In re Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997) ("The term 'party in interest' is broadly interpreted, but not infinitely expansive."); *see also In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) (Section 1109(b) is not exclusive in its listing of parties in interest, but "if a party is not affected by the reorganization process it should not be considered a party in interest").

Although parties in interest typically have a financial stake in the outcome of the litigation, under certain limited circumstances, courts have recognized that a party with a legal (as opposed to financial) interest may appear. *See, e.g.*, *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 5 (1st Cir. 1999) (individual creditor may maintain adversary proceeding against trustee for alleged breach of duty); *In re Brady*, 101 F.3d 1165, 1170-71 (6th Cir. 1996) (trustee acts as a party in interest in seeking extension of time to object to dischargeability of a debt on behalf of creditors); *In re Co Petro Mktg. Grp., Inc.*, 680 F.2d 566, 572 (9th Cir. 1982) (regulatory agency with supervisory responsibilities over the debtor's business or financial affairs); *In re Overview Equities, Inc.*, 240 B.R. 683, 686-87 (Bankr. E.D.N.Y. 1999) (party with legal interest in property, rather than claim, found to be a party in interest).

Whether or not someone is a party in interest must be read against the purposes of Chapter 11, which are to "preserv[e] going concerns and maximiz[e] property available to satisfy creditors," *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999) (citation omitted). Thus, any construction of the term "party in interest" must be mindful of the fact that Chapter 11 is structured the way that it is because Congress believed that "creditors and equity security holders are very often better judges of the debtor's economic viability and their own economic self-interest than courts, trustees, or [governmental agencies

13

such as] the SEC," *id.* at 458 n.28, and that is why Chapter 11 allows the intervention of third parties in limited circumstances, such as in the case of parties in interest. Although "party in interest" must be interpreted in terms of the specific provision in which it appears, *see In re Refco Inc.*, 505 F.3d at 116 n.9 (2d Cir. 2007) (noting that "party in interest" may have different meanings in different portions of the bankruptcy code), other rights afforded "parties in interest" throughout the bankruptcy code are instructive. These include: (1) the right to request the appointment of a trustee or examiner under Section 1104(a) and (b); (2) the right to request termination of a trustee's appointment under Section 1105; (3) the right to request conversion of a chapter 11 case to a case under an alternate chapter pursuant to Section 1112(b); (4) the right to file a plan under Section 1121(c); (5) the right to object to confirmation of a plan under Section 1128(b); and (6) the right to request a revocation of an order of confirmation under Section 1144.

There is no question in this case that K&L Gates had too remote an interest in the settlement agreement to have been considered a party in interest for the purposes of being heard before the bankruptcy court on the agreement's approval. As the bankruptcy court succinctly explained, the law firm "was not a creditor of Teligent; it was merely a potential debtor of Teligent's debtor (*i.e.*, Mandl). As such, it had no financial stake in the outcome of the bankruptcy case. Further, it had no stake in the outcome of the 9019 Motion [because] the Settlement did not require K&L to pay any money to the Teligent estate or to Mandl." *In re Teligent*, 417 B.R. at 210. We find no error in these conclusions. And because K&L Gates lacked standing to challenge the settlement agreement when it was pending before the bankruptcy court, the law firm is not estopped from asserting a defense in the malpractice action that relates to the validity of the settlement agreement. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288-89 (2d Cir. 2002) (collateral estoppel applies only where (1) the identical

14

issue was raised in a prior proceeding; (2) the issue was actually litigated and decided; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits).

We have considered Appellant and Cross-Appellant's remaining contentions and find them to be without merit for substantially the reasons stated by the bankruptcy and district courts.

## CONCLUSION

For the reasons stated herein, we **AFFIRM** the order of the district court.