**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

IN RE: ANONYMOUS,

*Respondents.*

OFFICE OF THE CIRCUIT
MEDIATOR FOR THE UNITED STATES
COURT OF APPEALS FOR THE FOURTH
CIRCUIT,

No. 01-9543

*Amicus Curiae.*

Before the Standing Panel on Attorney Discipline.

Argued: December 5, 2001

Decided: March 20, 2002

Before WILLIAMS, TRAXLER, and KING, Circuit Judges.

Decided by published per curiam opinion.

## OPINION

PER CURIAM:

This attorney discipline action arises out of a dispute over litigation expenses between an attorney (Local Counsel) and his client (Client), which developed following a successful mediation (the mediation) conducted by the Office of the Circuit Mediator for this Court (the OCM).[1] Local Counsel and Client agreed to resolve their "expense dis-

---

[1]Consistent with Rule 16(B) of the American Bar Association's Model Rules for Lawyer Disciplinary Enforcement and the confidentiality pro-

pute"[2] before an arbitral panel sponsored by the Virginia State Bar (the VSB arbitration). In their submissions to the VSB arbitration, Client, Local Counsel, and a third party[3] (Current Counsel) (collectively, the participants), disclosed information about or relating to the mediation and also sought responses to interrogatories from the Circuit Mediator. Upon being informed of these disclosures and the discovery effort, the Standing Panel on Attorney Discipline ordered each participant to submit briefs and present argument regarding the propriety of their disclosures in light of the confidentiality provisions of our Local Rule 33. Having considered the various submissions and heard argument in this matter, we undertake to resolve the following issues: (1) whether Client, Local Counsel, and/or Current Counsel breached the confidentiality of the mediation required by Rule 33; (2) whether sanctions are warranted for any breach; (3) whether and under what standard the confidentiality of a mediation may be waived for future disclosures; and (4) whether and under what standard the mediator may divulge information relating to the mediation. Before turning to these significant issues, we set forth in some detail the pertinent factual background and procedural history underlying this dispute.

---

vision of Local Rule 33, the Standing Panel on Attorney Discipline ordered, without objection prior to the commencement of oral argument, that the proceedings in this matter would be confidential and that all confidential documents submitted in connection with this matter would be sealed. To protect this confidentiality, we have omitted the names of the parties and have omitted the identifying characteristics of the mediated appeal.

[2]We refer to the dispute as an "expense dispute" because no disagreement exists with respect to attorney's fees; instead, the dispute relates solely to Client's responsibility to reimburse expenses and costs advanced by Local Counsel during the federal trial that was the subject of the mediation.

[3]This third party attended the mediation conference as a "friend" of Client, by consent of the parties and the mediator, and currently serves as Client's counsel in the expense dispute. He was not acting in a representative capacity during the mediation conference.

## I.

On March 21, 1997, Client retained the services of an attorney to initiate a Title VII claim for retaliatory firing. In the fee agreement signed by Client, she agreed to pay attorney's fees in the amount of 40% of the total recovery if the matter were resolved after trial and 33 1/3% if the matter settled. "In addition to" the attorney's fees, Client agreed to pay all expenses of litigation, out-of-pocket expenses, and court costs.

In March 1998, the retained attorney hired Local Counsel to aid in preparation of Client's trial. The retained attorney advised Local Counsel that she had obtained a signed fee agreement from Client, but Client did not execute a separate fee agreement with Local Counsel. Local Counsel thereafter advanced the majority of Client's litigation expenses and costs. On March 28, 2000, the Title VII case was tried before a jury. After a three-day trial, the jury returned a substantial verdict in favor of Client, which the district court reduced to comport with Title VII's statutory damages cap.[4] Both Client and the defendant appealed to this Court.

After filing their notices of appeal, a mediation conference was conducted before the OCM in December 2000. In attendance at the mediation conference were Client, Local Counsel, Current Counsel, the defendant, the defendant's two attorneys, and the Circuit Mediator. All those in attendance agreed to the confidentiality provision of Rule 33. The mediation conference culminated in a settlement agreement, and this Court entered an order dismissing the appeals.

Subsequent to the mediation conference but prior to the order of dismissal, the expense dispute underlying the current proceeding came to light. Client and Local Counsel agreed to resolve the expense dispute using the VSB arbitration, and Client retained Current Counsel to represent her in the VSB arbitration. On March 1, 2001, acting in his capacity as Client's lawyer, Current Counsel submitted several documents to the VSB arbitration on Client's behalf, including a copy of the settlement points of agreement from the mediation conference,

---

[4]Local Counsel had filed a petition for attorney's fees and costs, which the district court had not ruled on at the time of the appeal.

a copy of the typed settlement agreement, and a statement in which Client described conversations that took place during and after the mediation conference. Acting in his capacity as a witness at the mediation conference, Current Counsel submitted his own statement detailing his recollection of certain discussions that took place during and after the mediation conference.

On March 21, 2001, Local Counsel requested the consent of defendant to the disclosure of statements made during the mediation conference. Defendant, through its counsel, granted consent to the disclosure "solely for the purpose of the Bar mediation."[5] On the same day, Local Counsel telephoned the Circuit Mediator, informed her of the dispute concerning the reimbursement of expenses and costs, and requested her consent to the disclosure of statements made during the mediation conference. The Circuit Mediator responded that she was unable to give consent without instruction from this Court, and the mediator requested Local Counsel to submit a written, specific request detailing what he proposed to disclose. On March 22, 2001, prior to gaining consent from this Court, and without presenting any further request in support of such consent, Local Counsel submitted several documents to the VSB arbitration, including a statement wherein he described discussions that he had with Client at the mediation conference.

On March 27, 2001, Local Counsel wrote the Circuit Mediator, reiterating his request for her consent to disclose matters discussed during the mediation conference and to disclose notes Local Counsel prepared during the mediation conference. Local Counsel informed the Circuit Mediator that Client and Current Counsel already had breached the mediation's confidentiality, and he asked her to respond in writing to three informal interrogatories. With respect to the interrogatories, Local Counsel noted that he would supply the answers to the VSB arbitration panel, and he would not require the Circuit Mediator to appear at the arbitration.[6]

---

[5]Defendant's limited consent allowed Client and Local Counsel "to discuss the terms and conditions of our settlement and to further discuss the details of the settlement process."

[6]The informal interrogatories posed to the Circuit Mediator by Local Counsel on March 27, 2001, were the following:

The Circuit Mediator then advised this Court of Local Counsel's request for consent to disclosure and his submission of the interrogatories. In response, on October 12, 2001, we issued Standing Order 01-01, which provides in relevant part:

> All statements, documents, and discussions in [mediation] proceedings shall be kept confidential. The mediator, attorneys, and other participants in the mediation shall not disclose such statements, documents, or discussions without prior approval of the Standing Panel on Attorney Discipline. Any alleged violations of this rule shall be referred to the Court's Standing Panel on Attorney Discipline for a determination pursuant to Local Rule 46(g) of whether imposition of discipline is warranted.

Pursuant to this Standing Order, Client, Local Counsel, and Current Counsel were directed to appear before our Standing Panel on Attorney Discipline to address whether their submissions to the VSB arbitration breached the confidentiality provision of Rule 33. Having been informed that the Standing Panel was addressing the propriety of the participants' submissions, the VSB arbitration stayed all proceedings regarding the expense dispute until resolution of this matter. The OCM was then requested to participate in this proceeding as amicus curiae. Pending order of this Court, we directed the Circuit Mediator not to divulge information or answer any inquiries relating to the mediation.

---

1. Did you hear [Local Counsel] discuss with [Client] that her litigation expense obligation was to be taken out of [Client's] portion of the recovery, at the mediation in this matter held in Durham, North Carolina [i]n December[ ] 2000?

2. Did you hear [Local Counsel] waive his or her firm's entitlement to expense reimbursement or advise [Client] that the case expenses would be taken out of [Local Counsel's] contingent fee portion of the settlement?

3. Did you hear [Local Counsel] estimate [Client's] litigation and appellate expenses at or about $20,000 (or any other number) at the mediation . . . in this matter held in Durham, North Carolina [i]n December[ ] 2000?

## II.

Having outlined the significant facts and procedural history, we turn to the issue of whether Current Counsel, Local Counsel, and/or Client breached Rule 33's confidentiality provision, beginning with an examination of the Rule at issue. Rule 33 currently provides in pertinent part as follows:

> Information disclosed in the mediation process shall be kept confidential and shall not be disclosed to the judges deciding the appeal or to any other person outside the mediation program participants. Confidentiality is required of all participants in the mediation proceedings. All statements, documents, and discussions in such proceedings shall be kept confidential. The mediator, attorneys, and other participants in the mediation shall not disclose such statements, documents, or discussions without prior approval of the Standing Panel on Attorney Discipline.

4th Cir. R. 33.[7] The participants do not deny that they each submitted statements to the VSB arbitration revealing information disclosed during the mediation conference. Further, Current Counsel and Client concede that they submitted the settlement agreement itself, as well as notes regarding the settlement agreement, to the VSB arbitration. Despite the apparent violations of the plain language of the Rule, the participants maintain, for a variety of reasons, that their disclosures did not violate the confidentiality required by Rule 33.

---

[7]Rule 33 was amended on December 11, 2001, following notice and public comment. The prior relevant text of Rule 33 provided: "Information disclosed in the mediation process shall be kept confidential and shall not be disclosed by a circuit mediator, counsel, or parties to the judges deciding the appeal or to any other person outside the mediation program participants." Because the added language merely clarifies the previous rule, we find it helpful in resolving the current action. To the extent that the amendment eliminated ambiguity that existed at the time of the participants' disclosures, this ambiguity will be taken into account when determining whether or to what extent sanctions are warranted.

## A.

The participants first argue that their disclosures were not prohibited by Rule 33 because the disclosures did not involve matters central to the mediated dispute. The unambiguous text of Rule 33, however, does not draw the suggested distinction; instead, it prohibits the disclosure of "*[a]ll* statements, documents, and discussions." 4th Cir. R. 33 (emphasis added).[8] Moreover, because the confidentiality provision as written provides clear guidance in the form of a bright line rule, we decline to adopt an exception allowing for the disclosure of matters collaterally related to the mediation.

## B.

The participants next argue that because their submissions were made to a confidential forum,[9] the submissions should not be construed as violating Rule 33. Again, the unambiguous text of Rule 33 does not provide an exception for disclosures made to a confidential forum. Rather, it has at all relevant times restricted disclosures "to any other person outside the mediation program participants." The participants concede, as they must, that the members of the VSB arbitration are "person[s] outside the mediation program participants." Thus, the submissions made to the VSB arbitration panel by the participants breached the unambiguous text of Rule 33.[10]

---

[8]Indeed, this language, added in the 2001 amendments to Rule 33, merely clarified the prior Rule's equally broad protection of "information disclosed in the mediation process."

[9]Virginia law provides for confidentiality of materials and communications divulged during a "dispute resolution program." Va. Code Ann. § 8.01-576.10 (Michie 2000).

[10]We recognize circumstances where confidential material properly may be divulged to someone other than one of the mediation participants without obtaining prior consent of the Standing Panel. For instance, as in cases involving the protection of attorney-client confidentiality, an attorney is permitted to consult with other employees of her law firm and with experts or professionals retained by the law firm to aid in the negotiation or structuring of the settlement, such as financial consultants, without breaching confidentiality. If any person, however, employed with or by counsel breaches confidentiality, counsel will be held respon-

## C.

Current Counsel also asserts that, because he was not acting as counsel during the mediation conference and because he was not a party to the mediated dispute when he attended the mediation conference, his disclosures did not fall within the scope of Rule 33. At the time of Current Counsel's submissions, Rule 33 provided, "Information disclosed in the mediation process shall be kept confidential and shall not be disclosed *by a circuit mediator, counsel, or parties* to the judges deciding the appeal or to any other person outside the mediation program participants." Rule 33 (emphasis added). As is made clear by our recent amendment to Rule 33, the term "parties," as used in the earlier version of Rule 33, is not limited to the formal parties of the mediated dispute, as Current Counsel asserts, but instead applies to all participants in the mediation, including attendants at the mediation conference.[11] Moreover, it is significant to us that Current Counsel is a lawyer, who was made aware of Rule 33's confidentiality provision prior to his participation in the mediation conference, and who explicitly agreed to abide thereby. Thus, we reject Current Counsel's contention that his disclosures did not fall within the scope of Rule 33.

---

sible for the breach. *See, e.g.*, Model Rules of Prof'l Conduct R. 1.6(a) & cmt. 8 (1998) (noting that a lawyer may reveal confidential information "for disclosures that are impliedly authorized in order to carry out the representation"); Model Rules of Prof'l Conduct R. 5.1 & 5.3 (describing lawyers' responsibility to ensure that employees' conduct conforms with relevant rules of professional conduct). Additionally, as we hold in Section IV.A.1. *infra*, under some circumstances, it may be appropriate for the Standing Panel to grant consent for disclosures regarding a compensation dispute. *Cf.* Model Rules of Prof'l Conduct R. 1.6(b)(2) & cmt. 18 (providing an exception to confidentiality where an attorney discloses client information for the purpose of resolving a compensation dispute).

[11]For instance, we understand that, in some circumstances, the Circuit Mediator sometimes allows the parties to the mediated dispute to bring family members to the mediation conference, but the family members are advised of Rule 33 and agree to abide by its confidentiality provision.

## D.

The participants also argue that due process requires us to conclude that their submissions did not violate Rule 33, in that a contrary conclusion would deny Client and Local Counsel the right to resolve their expense dispute. We disagree. Rule 33, in both its current and previous form, does not deprive participants of a forum for resolution of disputes; rather; it limits the availability and use of information gleaned during the mediation in subsequent proceedings. *Smith v. Cromer*, 159 F.3d 875, 882 (4th Cir. 1998) ("It is clear that there are limits upon the due process which is accorded a defendant in presenting his defense, and, further, that the right to compulsory process is not absolute."). Courts routinely have recognized the substantial interest of preserving confidentiality in mediation proceedings as justifying restrictions on the use of information obtained during the mediation. *Calka v. Kucker Kraus & Bruh*, 167 F.3d 144, 146 (2d Cir. 1999) (holding that Second Circuit's rule protecting the confidentiality of matters disclosed during mediation barred use of statements regarding the mediation in a subsequent state court proceeding); *cf. Cromer*, 159 F.3d at 882-83 (noting that the due process rights of the party seeking disclosure of confidential information must be weighed against the asserted interest in confidentiality and holding that the defendant's constitutional rights did not overcome the Justice Department's claim of privilege in maintaining the secrecy of its confidential informant files). Further, Rule 33 does not and has never precluded requests for consent to disclosures, as is evidenced by Local Counsel's attempt to gain the Circuit Mediator's consent to his disclosures and our prompt adoption of Standing Order 01-01 subsequent to this attempt, as well as our decision, in Section IV.A. *infra*, to grant waiver of confidentiality where manifest injustice would result. Accordingly, we reject the participants' claim that due process renders the confidentiality provision of Rule 33 unenforceable.

## E.

Finally, in addition to their disclosures about conversations that took place at the mediation conference, Client and Current Counsel disclosed conversations relating to the mediated dispute that took place as the participants were leaving the mediation conference. Client and Current Counsel claim that these disclosures did not violate

Rule 33 because they involved conversations that occurred after the mediation had concluded. Although Rule 33 does not specifically define the duration of "mediation" for purposes of maintaining confidentiality, it is plain that the "mediation" is not limited to the mediation conference, but continues until the mediated dispute has been either dismissed or is otherwise removed from the OCM. This conception of the duration of mediation is a practical necessity of the process itself, in that the mediated dispute is rarely conclusively resolved during the mediation conference. Instead, the parties to the dispute often resume mediation, or refine aspects of the settlement agreement, subsequent to the mediation conference, and many times do so outside the presence of the mediator. These conversations and the information disclosed therein are entitled to the same degree of confidentiality as disclosures made during the mediation conference. Accordingly, until a mediated dispute is dismissed or is otherwise removed from the OCM, all "statements, documents, and discussions" relating to the mediation remain within the bailiwick of the OCM and, therefore, remain confidential.

Thus, despite their various protestations to the contrary, we conclude that Client, Local Counsel, and Current Counsel each breached Rule 33's confidentiality provision by disclosing information obtained during the mediation to persons other than the mediation program participants.

### III.

We next turn to the question of whether the violations of Rule 33 committed by Client, Legal Counsel, and Current Counsel warrant the imposition of sanctions by the Standing Panel. In assessing the sanctions issue, we review the totality of the circumstances, and determine, first, whether sanctions are warranted, and if warranted, the severity of any such sanctions. In so doing, we analyze and weigh the following and other relevant factors: (1) whether the mediator explained the extent of the confidentiality rules, and the clarity of such explanation; (2) whether the parties executed a confidentiality agreement; (3) the extent of willfulness or bad faith involved in the breach of confidentiality Rule; (4) the severity or adverse impact of the disclosure on the parties or the case; and (5) the severity or adverse impact of the disclosure on the mediation program. *See gen-*

*erally* Robert J. Niemic et al., *Guide to Judicial Management of Cases in ADR* 104 (Federal Judicial Center 2001) (discussing various considerations regarding the propriety of sanctions).

Applying these factors, we note that the participants agree that the mediator clearly explained the confidentiality provision prior to commencement of the mediation conference and that they each agreed to abide by it. Although no one executed a confidentiality agreement at that time, the settlement agreement, which Client and Local Counsel both signed, contained a confidentiality provision that provides for confidentiality as to all of the "terms of the agreement." On the other hand, at the time of these disclosures, we had not previously interpreted the scope of Rule 33, and Current Counsel, as a participant but not a formal party to the mediated dispute, had some basis, however modest, for asserting that his disclosures did not fall within the literal scope of the former Rule's prohibition. Additionally, Local Counsel had some basis to believe that his disclosures did not breach confidentiality, in that the Model Rules of Professional Conduct provide an exception to confidentiality for disclosures of confidential client information where the disclosures are for the purpose of establishing an attorney's entitlement to compensation. Model Rules of Prof'l Conduct R. 1.6(b)(2) & cmt. 18; Restatement (Third) of Law Governing Lawyers § 65 (1998).

Weighing these factors and considering the participants' statements and submissions before the Standing Panel, we are convinced that none of the participants intended to violate Rule 33, and we are unable to conclude that the disclosures were made in bad faith or with malice. Moreover, the disclosures have not had an adverse impact on the mediated dispute, and because the disclosures were made to a non-public, confidential forum, any adverse impact on the mediation program has been slight. Accordingly, considering the totality of the circumstances, we conclude that the violations of Rule 33 are not sufficient to warrant sanctions in this case.

IV.

The participants next contend that, pursuant to Rule 33's provision allowing participants to seek the Standing Panel's approval for future disclosures of confidential information, we should grant a limited

waiver of confidentiality to permit the VSB arbitration to consider their previously-submitted disclosures in resolving the expense dispute.[12] Local Counsel also argues that we should grant consent for the Circuit Mediator to submit written answers to the informal interrogatories posed in his letter dated March 27, 2001. We address each argument in turn, setting forth the standard by which we will determine whether waiver is appropriate in each context.

A.

To determine when the Standing Panel should grant a waiver of confidentiality to the participants, it is necessary to examine the relevant interests protected by non-disclosure. The assurance of confidentiality is essential to the integrity and success of the Court's mediation program, in that confidentiality encourages candor between the parties and on the part of the mediator, and confidentiality serves to protect the mediation program from being used as a discovery tool for creative attorneys. *In re Lake Utopia Paper Ltd.*, 608 F.2d 928, 930 (2d Cir. 1979) ("It is essential to the proper functioning of the Civil Appeals Management Plan that all matters discussed at these conferences remain confidential."); Alan Kirtley, *The Mediation Privilege's Transition from Theory to Implementation: Designing a Mediation Privilege Standard to Protect Mediation Participants, the Process and the Public Interest*, 1995 J. Disp. Resol. 1, 9-10 ("Without adequate legal protection, a party's candor in mediation might well be 'rewarded' by a discovery request or the revelation of mediation information at trial."). As the Second Circuit properly has observed:

> If participants cannot rely on the confidential treatment of everything that transpires during [mediation] sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tight-lipped, non-committal manner

---

[12]Standing Order 01-01 and Rule 33 each provide that "prior" to the disclosure of information related to the mediation, the participant must seek approval from the Standing Panel. Here, although the participants did not seek and obtain such approval prior to their disclosures, we consider their request for waiver of confidentiality because the avenue for obtaining waiver provided in Rule 33 and Standing Order 01-01 was implemented subsequent to the participants' disclosures.

more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute. This atmosphere if allowed to exist would surely destroy the effectiveness of a program which has led to settlements and withdrawals of some appeals and to the simplification of issues in other appeals . . . .

*In re Lake Utopia*, 608 F.2d at 930. In a program like ours, where participation is mandatory and the mediation is directed and sanctioned by the Court, "the argument for protecting confidential communications may be even stronger because participants are often assured that all discussions and documents related to the proceeding will be protected from forced disclosure." *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1176 n.9 (C.D. Cal. 1998), *aff'd* 216 F.3d 1082 (9th Cir. 2000).

On the other hand, we must recognize that under certain circumstances, non-disclosure may result in an untenable "loss of information to the public and the justice system." Sarah R. Cole et al., *Mediation: Law, Policy & Practice* § 9:2 (2d ed. 2001). Thus, in determining whether waiver is appropriate, we must balance the public interest in protecting the confidentiality of the settlement process and countervailing interests, such as the right to every person's evidence. *In re: Grand Jury Subpoena*, 148 F.3d 487, 492-93 (5th Cir. 1998); *see also Wilson v. Attaway*, 757 F.2d 1227, 1245 (11th Cir. 1985) (holding that the district court did not abuse its discretion by weighing confidentiality in mediation proceedings against public's interest in insuring that "justice [is] done").

We believe that the balance between these interests is best resolved by disallowing disclosure unless the party seeking such disclosure can demonstrate that "manifest injustice" will result from non-disclosure. *Cf.* Administrative Dispute Resolution Act of 1996, 5 U.S.C.A. § 574(a)(4)(A) (1998) (providing that disclosures of dispute resolution communications are prohibited unless, inter alia, a court determines that disclosure is necessary to prevent "manifest injustice"). Application of the manifest injustice standard requires the party seeking disclosure to demonstrate that the harm caused by non-disclosure will be manifestly greater than the harm caused by disclosure.

In evaluating the harm resulting from non-disclosure, we observe that in most instances, an expense dispute between lawyer and client should easily be resolved without reference to settlement negotiations, primarily because the client is obligated to reimburse advanced litigation expenses as a matter of the state's ethics rules, independent of mediation proceedings. *See, e.g.*, Va. R. Prof'l Conduct R. 1.8(e)(1) ("[A] lawyer may advance court costs and expenses of litigation, provided the client remains ultimately liable for such costs and expenses."). On the other hand, where an attorney seeks to establish his entitlement to reimbursement of expenses, the attorney typically is permitted to disclose confidential client information.[13] Model Rules of Prof'l Conduct 1.6(b)(2) & cmt. 18; Restatement (Third) Law Governing Lawyers § 65.

1.

With these general principles in mind, we turn to our application of the manifest injustice standard to Local Counsel's and Client's submissions. Local Counsel and Client agree that disclosure of information related to the mediation proceedings is critical to resolution of their expense dispute. As Local Counsel and Client note, the expense dispute arose during the mediation conference, and resolution of the dispute requires disclosures relating to the context of the dispute's origination. Additionally, portions of information disclosed during the mediation may shed light on their understanding of the expense obligation at that time. Specifically, Client contends that the disbursement of the settlement proceeds between herself and Local Counsel, which

---

[13]As noted earlier, the Model Rules of Professional Conduct provide that an attorney may disclose confidential client information in a compensation dispute without breaching confidentiality. Model Rules of Prof'l Conduct R. 1.6(b)(2) & cmt. 18 (1998). Although we recognize the benefits of such an exception, we conclude that prior to making any disclosure relevant to a compensation dispute, the attorney must request and secure the consent of the Standing Panel, in that the mediation program has interests beyond those of the lawyer and client. *Cf.* Henry D. Levine, *Self-Interest or Self-Defense: Lawyer Disregard of the Attorney-Client Privilege for Profit and Protection*, 5 Hofstra L. Rev. 783, 825-26 (1977) (urging that judicial approval be required before a fee-collection disclosure is made).

is set forth in the settlement agreement, is evidence that her obligation to reimburse legal expenses was incorporated into Local Counsel's share of the settlement proceeds. In response, Local Counsel argues that conversations that took place during the mediation conference are evidence that Client understood that the settlement agreement did not affect Client's obligation to reimburse the litigation expenses in any manner, and he contends that his notes regarding the settlement conference corroborate his assertion that these conversations took place. Insofar as the mediation conference was the genesis of the expense dispute and information divulged during the conference is critical to resolution of the expense dispute, the harm resulting from non disclosure might, in the context of the expense dispute, be substantial.

Further, any harm resulting from disclosure would be slight, in that the contemplated disclosures will be made to a non-public, confidential forum, and all of the attendants of the mediation, excluding the Circuit Mediator, have consented to a limited waiver of confidentiality for disclosures relating to the expense dispute.[14] *Cf.* 5 U.S.C.A. § 574(a)(1) (allowing for disclosure of confidential settlement information where all parties consent to disclosure). Additionally, it is significant that little mention needs to be made regarding the mediation of the substantive merits of the appeal. In light of these considerations, we conclude that Local Counsel and Client have demonstrated that non-disclosure of limited and relevant information related to the mediation would cause manifestly greater harm than the disclosure of such information. Accordingly, we grant conditional consent for Local Counsel and Client to disclose the following limited material: (1) conversations that took place during the mediation regarding the expense dispute and their notes, or portions thereof, regarding the settlement negotiations corroborating these conversations; and (2) the settlement agreement and notes regarding the settlement agreement, but only to the extent that these materials explain or relate to the disbursement of the settlement funds. Our consent is conditioned upon Local Counsel and Client securing from the VSB arbitral panel its

---

[14]The attendants' consent, excluding the mediator, is limited to disclosures made to the VSB program. The ultimate decision to grant or deny consent on behalf of the mediator to the other attendants' disclosures is vested in the Standing Panel, although the Standing Panel will normally seek input from the mediator prior to granting or denying consent.

written agreement to abide by Rule 33's confidentiality provision. We caution Local Counsel and Client to adhere strictly to the parameters of this limited waiver, and we direct that all previous submissions outside the confines of this waiver be withdrawn from the VSB arbitration.

2.

With respect to Current Counsel's disclosures, our analysis is impacted by different considerations. In Current Counsel's submitted statement to the VSB arbitral panel, he has detailed his recollection of conversations that he overheard during and after the mediation conference regarding the expense dispute. This submission allows Current Counsel impermissibly to act as both an advocate and as a witness on behalf of Client in the expense dispute, which is forbidden by the Rules of Professional Conduct of both Virginia and Florida.[15] Va. R. Prof'l Conduct R. 3.7(a); Fla. R. Prof'l Conduct R. 4-3.7(a). Regardless of the extent to which Current Counsel's statement may be necessary or helpful in resolving the expense dispute, we decline to grant consent for him to violate his ethical obligation to refrain from acting as both an advocate and a material witness on behalf of Client. If, however, Current Counsel withdraws as Client's attorney in the expense dispute, we grant consent for Current Counsel's disclosures, subject to the same conditions and limitations that we have set forth with respect to Local Counsel and Client. Assuming that Current Counsel does not withdraw as Client's advocate, we direct Current Counsel to retract all documents previously submitted to the VSB arbitration in his capacity as a witness of the mediation.

B.

Turning to the question of whether to consent for the Circuit Mediator to divulge information related to the mediation, we observe that allowing disclosures by the mediator in subsequent proceedings implicates concerns well beyond those implicated by disclosures of

---

[15]Current Counsel is licensed to practice law in Florida and has not been admitted to practice law in Virginia. We trust that, before proceeding further as Client's advocate, Current Counsel will gain appropriate pro hac vice admission to represent Client in the VSB arbitration.

other participants to a mediation.[16] For example, our granting of consent for the mediator to participate in any manner in a subsequent proceeding would encourage perceptions of bias in future mediation sessions involving comparable parties and issues, and it might encourage creative attorneys to attempt to use our court officers and mediation program as a discovery tool. As noted in *NLRB v. Macaluso, Inc.*, 618 F.2d 51 (9th Cir. 1980),

> If [mediators] were permitted or required to testify about their activities, or if the production of notes or reports of their activities could be required, not even the strictest adherence to purely factual matters would prevent the evidence from favoring or seeming to favor one side or the other. The inevitable result would be that the usefulness of the [mediation program] in the settlement of future disputes would be seriously impaired, if not destroyed.

*Id.* at 54 (internal quotation marks omitted); *Olam v. Cong. Mortgage Co.*, 68 F. Supp. 2d 1110, 1134 (N.D. Cal. 1999) ("Good mediators are deeply committed to being and remaining neutral and non-judgmental, and to building and preserving relationships with parties. To force them to give evidence that hurts someone from whom they actively solicited trust . . . rips the fabric of their work and can threaten their sense of the center of their professional integrity."). In light of these heightened concerns unique to disclosures by the Circuit Mediator, the threshold for granting of consent to disclosures by the mediator is substantially higher than that for disclosures by other participants. Thus, we will consent for the Circuit Mediator to disclose confidential information only where such disclosure is mandated by manifest injustice, is indispensable to resolution of an important subsequent dispute, and is not going to damage our mediation program.[17]

---

[16]The OCM has requested that we utilize the resolution of this case to adopt a federal mediation privilege. In essence, a federal mediation privilege would be a rule of evidence to preclude the disclosure of any document, discussion, or statement made during mediation. Because we are able to interpret and apply Rule 33 without the adoption and application of a federal mediation privilege, we will reserve this issue for another day.

[17]Of course, we do not address the rare case in which the mediator violates some independent law in the course of conducting the mediation,

In this situation, Local Counsel has failed to establish that the expense dispute is incapable of resolution absent the Circuit Mediator's involvement. Further, Client objects to the Circuit Mediator's involvement, contending that she will be biased in her responses to Local Counsel's inquiries. And the mediation program may be damaged when a party who has been assured of confidentiality subsequently faces a disclosure of confidential material by a mediator who is perceived, rightly or wrongly, as biased. This perception of bias is the type of damage against which our confidentiality rule, as applied to the Circuit Mediator, is attempting to protect. Accordingly, we decline to consent for the Circuit Mediator to respond to the informal interrogatories posed by Local Counsel or to otherwise disclose confidential information in the expense dispute.[18]

V.

Based upon the foregoing, we conclude that Client, Local Counsel, and Current Counsel each breached Rule 33, but we decline to impose sanctions upon them in the circumstances of this case. We conditionally consent to disclosures by Local Counsel and Client, limited to the expense dispute as set forth above. We deny consent, however, for Current Counsel to make any disclosures related to the mediation, and we order Current Counsel to withdraw all materials submitted to the VSB arbitration in his capacity as a witness, unless Current Counsel withdraws from his representation of Client. We also decline to consent for the Circuit Mediator to disclose any information or answer any questions related to the mediation.

*SO ORDERED*

---

wherein the mediator certainly could be required to testify at a subsequent proceeding. *Cf. Virmani v. Novant Health Inc.*, 259 F.3d 284, 287-93 (4th Cir. 2001) (holding that hospital's peer review records were not privileged from discovery where physician claimed that hospital's peer review process was conducted in a discriminatory manner).

[18]As with our consideration of whether to grant consent to other attendants' disclosures, before the Standing Panel would grant consent for the mediator to disclose information related to the mediation, the Standing Panel should seek the input of the mediator.