**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2549
_____

IN RE:  ZOHAR III CORP., et al.
Debtors

ARK ANGELS III, LLC; ARK ANGELS VIII; ARK INVESTMENT PARTNERS II LP;
ARK II CLO 2001-1 LTD.; ARK ANGELS, LLC; LD INVESTMENTS, LLC; ARK
ANGELS II, LLC; LYNN TILTON; OCTALUNA, LLC; OCTALUNA II, LLC;
OCTALUNA III, LLC; PATRIARCH PARTNERS LLC; PATRIARCH PARTNERS
VIII, LLC; PATRIARCH PARTNERS XIV, LLC; PATRIARCH PARTNERS XV,
LLC' PATRIARCH PARTNERS MANAGEMENT GROUP, LLC; PATRIARCH
PARTNERS AGENCY SERVICES, LLC; ZOHAR HOLDINGS, LLC
Appellants
_____

On Appeal from the United States District Court
for the District of Delaware
(Case No. 1:22-mc-00119)
District Judge:  Honorable Thomas L. Ambro[1]
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 8, 2024
_____

Before:  CHAGARES, Chief Judge, PORTER and SCIRICA, Circuit Judges.

(Opinion filed: April 23, 2024)
_____

---

[1] The Honorable Thomas L. Ambro, Circuit Judge sitting by designation pursuant to 28
U.S.C. § 291(b).

OPINION[*]

_____

CHAGARES, <u>Chief</u> <u>Judge</u>.

A local bankruptcy rule in the United States Bankruptcy Court for the District of Delaware prohibits mediating parties from divulging information conveyed during the course of mediation. Despite this rule, the appellants ("Patriarch Stakeholders" or "Patriarch") seek to use mediation communications in support of an administrative expense claim. They argue that the appellees ("Zohar Funds" or the "Funds") waived any confidentiality protection over the mediation communications sought and, in any event, Patriarch Stakeholders ought to be able to use this evidence in the interest of justice. Because we agree with the reasoning of the District Court, we will affirm the District Court's order affirming the Bankruptcy Court's order striking the independent claim.

I.[2]

Lynn Tilton founded Patriarch Partners, LLC, a private investment firm, in 2000. Through her firm, Tilton created different collateralized investment funds called the Zohar Funds. The Funds' assets were comprised mostly of loans to distressed businesses (the "Portfolio Companies"). The Funds also held equity in the Portfolio Companies. They were structured in such a way that, upon the sale of a Portfolio Company, certain percentages of the net proceeds would waterfall down to fulfill outstanding principal and

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[2] Because we write for the parties, we recite only facts pertinent to our decision.

2

interest payments on the notes held by investors.  Only after the noteholders were paid would Tilton receive any of the proceeds.  Tilton raised approximately $2.5 billion by issuing secured notes to the Funds' investors.

But Tilton and the Funds soon faced financial difficulties.  Extensive litigation between Tilton's entities and one of the Funds' noteholders hamstrung the Funds' ability to sell at least one Portfolio Company and to procure financing for the other sales.  As a result, the Funds defaulted on payments to their noteholders.  The Funds filed for bankruptcy under Chapter 11 of the Bankruptcy Code in March 2018.

After the Funds filed for bankruptcy, other parties and creditors filed various motions before the Bankruptcy Court.  The Bankruptcy Court assigned the case to mediation and appointed a mediator.  All parties entered the mediation and executed a settlement agreement (the "Settlement Agreement"), which the Bankruptcy Court approved in May 2018.

The Settlement Agreement is relevant in four respects.  First, it replaced the Funds' controller, Tilton, with an independent director.  Second, it implemented a litigation stay of previous and new litigation for fifteen to eighteen months to give the parties time to focus on converting the Funds' assets to cash.  Third, it established and outlined a joint "Monetization Process" to sell the Funds' assets.  Fourth, it included rules and procedures governing resolution of breaches of the Settlement Agreement and disputes arising from the Monetization Process.

The Settlement Agreement provides the following regarding breaches of the Settlement Agreement:

3

> If any party materially breaches this Agreement, the dispute shall be in the first instance determined by the Mediator on a confidential basis. The Mediator shall have all remedies available to him. If the Mediator cannot resolve the dispute, the Mediator shall make a report and recommendation to the Bankruptcy Court and the parties shall jointly seek an order of the Bankruptcy Court resolving such dispute. In connection with the foregoing, the Mediator shall determine to what extent information should be filed under seal, subject to the order of the Bankruptcy Court approving such filing under seal.

Appendix ("App.") 41 ¶ 23. With respect to disputes arising from the Monetization Process, the Settlement Agreement provides that "[a]ny dispute with respect to the Monetization Process between the Independent Director/CRO and Tilton, in the first instance, shall be referred to the Mediator. If the dispute cannot be resolved by the Mediator, the parties retain all rights to seek an order of the Bankruptcy Court resolving such dispute." App. 38 ¶ 11.

The Monetization Process produced no sales by late 2018. So, Tilton proposed a solution for a global restructuring. The parties discussed this proposal at length during mediation, but they ultimately failed to agree. Soon after negotiations failed and the litigation stay was lifted, the parties blamed each other for bad faith conduct in the preceding months. One of the noteholders involved in the mediation amended its complaint in an adversary proceeding against Tilton to include claims based upon Tilton's alleged conduct during the global restructuring negotiations. And, in 2019, during a bankruptcy proceeding for one of the Portfolio Companies that entered bankruptcy independent of the Funds' bankruptcy, counsel for Debtors cross-examined a bank representative from whom Tilton sought funding to consummate the global restructuring.

4

Patriarch Stakeholders filed an administrative expense claim in 2021 alleging that the Debtors "failed to abide by their obligations under the Settlement Agreement to negotiate in good faith when considering monetization proposal advanced by Ms. Tilton." Dist. Ct. Dkt. No. 17 at A522. Patriarch needed evidence from the global restructuring negotiation to support its administrative expense claim.[3] Specifically, Patriarch needed evidence showing the "[p]roposals made by parties to the Settlement Agreement during the mediation period," "[c]ertain terms of those proposals," and "[w]hat [the] parties did in response to these proposals." Id. at A728. But a local bankruptcy rule in the District of Delaware provides that "the participants in any mediation are prohibited from divulging, outside of the mediation, any oral or written information disclosed by the parties or by witnesses in the course of the mediation. Del. Bankr. Loc. R. 9019-5(d)(i) (2019).

Patriarch sought leave from the Bankruptcy Court to introduce the mediation evidence. The Bankruptcy Court reviewed the evidence and ordered the Funds to file a motion to strike the relevant portions. The Bankruptcy Court granted the motion to strike and dismissed the claim without prejudice. The District Court affirmed. The appellants timely appealed.

---

[3] Patriarch argued before the Bankruptcy and District Courts that the global restructuring negotiations were not part of the court-ordered mediation. But it does not argue this on appeal, so we will not consider it.

## II.

The Bankruptcy Court and District Court had jurisdiction over this Chapter 11 reorganization under 28 U.S.C. §§ 157 and 1334. The District Court had jurisdiction to hear bankruptcy appeals of "final judgments, orders, and decrees" under 28 U.S.C. § 158(a)(1). We have appellate jurisdiction under 28 U.S.C. § 158(d)(1). When reviewing a bankruptcy decision on appeal, "we 'stand in the shoes' of the district court and apply the same standard of review." In re AE Liquidation, Inc., 866 F.3d 515, 522 (3d Cir. 2017) (quoting In re Glob. Indus. Techs., Inc., 645 F.3d 201, 209 (3d Cir. 2011) (en banc)). We review the lower court's legal determinations de novo and its factual determinations and interpretation of local rules for abuse of discretion. See Weitzner v. Sanofi Pasteur, Inc., 909 F.3d 604, 613 (3d Cir. 2018); In re Klaas, 858 F.3d 820, 827 (3d Cir. 2017). For evidentiary privileges, we review rulings on the waiver of privileges for abuse of discretion. See In re Chevron Corp., 633 F.3d 153, 161 (3d Cir. 2011); Livingstone v. N. Nelle Vernon Borough, 91 F.3d 515, 524 (3d Cir. 1996).

## III.

Delaware Local Bankruptcy Rule 9019-5 provides, in part:

> Protection of Information Disclosed at Mediation. The mediator and the participants in any mediation are prohibited from divulging, outside of the mediation, any oral or written information disclosed by the parties or by witnesses in the course of the mediation. No person may rely on or introduce as evidence in any arbitral, judicial or other proceeding, evidence pertaining to any aspect of the mediation effort, including but not limited to: (A) views expressed or suggestions made by a party with respect to a possible settlement of the dispute; (B) the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator; (C) proposals made or views expressed by the mediator; (D) statements or admissions made by a party in the course of the

6

mediation; and (E) documents prepared for the purpose of, in the course of, or pursuant to the mediation.

Del. Bankr. Loc. R. 9019-5(d)(i) (2019).[4] Patriarch argues on appeal that the Bankruptcy and District Courts erred because the Debtors forfeited[5] the protections of Local Bankruptcy Rule 9019-5(d). Patriarch also argues that the interest of justice requires it be permitted to rely upon the evidence sought. We address each argument in turn.

A.

The Bankruptcy Court soundly found no forfeiture of Local Bankruptcy Rule 9019-5(d)'s protections. Patriarch contends that the Debtors twice forfeited the protections of the rule: at the moment that the Bankruptcy Court approved the Settlement Agreement and through the Debtors' conduct in bankruptcy proceedings for other Portfolio Companies.

Patriarch Stakeholders argue that the Settlement Agreement's two dispute resolution provisions constitute forfeiture. They view these provisions as necessarily forfeiting the confidentiality protections because enforcing the confidentiality right would "completely eviscerate the litigation right" to raise breaches of the Settlement Agreement

---

[4] Delaware Bankruptcy Local Rule 9019-5(d) was revised in 2022. But the 2019 version was in force when Bankruptcy Court approved the Settlement Agreement and when the mediation occurred. Both parties agree the 2019 version applies, as do we.

[5] The parties use the terms "waiver" and "forfeiture" interchangeably in their briefs. Our case law occasionally uses the term "waiver" as a mistakenly capacious term referring to both waiver and forfeiture. See United States v. Dowdell, 70 F.4th 134, 140 (3d Cir. 2023); Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist., 877 F.3d 136, 146-47 (3d Cir. 2017). As the District Court noted, what the parties describe concerns forfeiture because it was inadvertent.

or disputes arising from the Monetization Process with the Bankruptcy Court. Patriarch Br. 34.

Nothing in the Settlement Agreement explicitly evinces the parties' desire to forgo the confidentiality protections of the local rule. And the operation of the Settlement Agreement's dispute resolution processes does not necessarily concern information offered at a mediation conference. If the parties wished to litigate matters that concerned information offered at a mediation conference, they, as Patriarch did, see Appendix ("App.") 75, 91, could request the Bankruptcy Court to lift the mediation confidentiality rule, as contemplated by the Local Bankruptcy Rules. See Del. Bankr. Loc. R. 1001-1(c) (2019) ("Modification. The application of these Local Rules in any case or proceeding may be modified by the Court in the interest of justice.").[6] The Bankruptcy Court's modification rule acts as a safety valve ensuring that parties may maintain mediation confidentiality as prescribed by Local Bankruptcy Rule 9019-5, subject to the possibility of lifting that rule in the interest of justice. Because the parties did not explicitly waive the protections of the confidentiality rule, and confidentiality did not frustrate the parties' dispute resolution processes and thereby implicitly forfeit the protections of the confidentiality rule, the District Court correctly held that "enforcement of the Local Rule created no incompatibility with the parties' Settlement Agreement." App. 23.

---

[6] Although we apply the 2019 version of this Delaware Bankruptcy Local Rule, see supra note 4, the current version of Local Rule 1001-1(c) is the same.

Nor did the Bankruptcy Court err when it found that Patriarch's conduct in other proceedings forfeited the confidentiality protections of the local rule.[7] Patriarch Stakeholders contend that Funds' cross-examination of a bank representative in connection with Tilton's request for financing for the global restarting and its failure to object to an amended complaint that included similar information constituted waiver of confidentiality of this information.

In the context of the attorney-client privilege, this Court has instructed that parties may not use privileged information "both as a 'shield' and a 'sword.'" Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 221 n.24 (3d Cir. 2006). If a party "agrees to disclose only favorably privileged documents while keeping for itself the unfavorable ones to gain an advantage in litigation," this partial disclosure may constitute an implied waiver. In re Teleglobe Commc'ns Corp., 493 F.3d 345, 378 (3d Cir. 2007); see also Westinghouse

---

[7] Patriarch Stakeholders argue, as a threshold matter, that because the Bankruptcy Court "never considered the forfeitures raised by Patriarch Stakeholders," Reply Br. 12, and held that no waiver of a local rule can occur, it committed reversible error. But Patriarch Stakeholders misconstrue the Bankruptcy Court's ruling. The Bankruptcy Court ruled that "[f]or similar reasons I reject Patriarch's argument that the debtors waived any confidentiality requirements of the local rules. No case law has been cited to support the idea that a waiver of our local rule can occur, let alone under the circumstances here." App. 62. The Bankruptcy Court expressly considered Patriarch Stakeholders' forfeiture arguments and held that Patriarch Stakeholders had produced no law showing either that this local rule may be waived or, even if it could, whether what occurred constituted forfeiture.

"We may affirm on any basis supported by the record." Hartig Drug Co. v. Senju Pharm. Co., 836 F.3d 261, 273 (3d Cir. 2016) (quoting Davis v. Wells Fargo, 824 F.3d 333, 350 (3d Cir. 2016)). Because Patriarch has failed to demonstrate that this specific conduct amounts to forfeiture for the reasons outlined above, we may assume, without deciding, that the parties may waive the protections of the local rules.

Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1426 n.12 (3d Cir. 1991).

Courts consider whether "one party t[ook] advantage of another" and if partial disclosure created an "unfair advantage" when deciding whether partial disclosure forfeits a privilege as to all or some of privileged information. In re Teleglobe, 493 F.3d at 361; see also Westinghouse, 951 F.2d at 1426 n.12 (considering whether a partial disclosure would be "unfair" to a party's adversary and if the disclosure allowed "the disclosing party to present a one-sided story to the court"). Considering the posture at which this information was elicited on cross-examination at a different bankruptcy proceeding, it is not evident that the Debtors sought to use the information as a "sword" or that it took advantage of Patriarch Stakeholders. The information elicited on cross-examination was in connection to the Portfolio Company's value, not the global restructuring proposals made during mediation. It was not an attempt to "present a one-sided story" using this information and would be inappropriately viewed as a forfeiture of confidentiality. Westinghouse, 951 F.3d at 1426 n.12. Patriarch's argument that the District Court's "focus on 'aim,'" Patriarch Br. 43, was legal error contravenes this Court's case law, which expressly examines and contemplates the purpose for which information is offered in determining waiver. See, e.g., Berckeley, 455 F.3d at 222 ("[Appellant] cannot rely upon the legal advice it received for the purpose of negating its scienter without permitting [Respondent] the opportunity to probe the surrounding circumstances and substance of that advice." (emphasis added)).

We similarly cannot discern any abuse of discretion in the Bankruptcy Court's determination that the Funds' failure to object to the noteholder's amendment of its

complaint did not constitute a forfeiture. It was the mediation participant-noteholder that amended its complaint in an adversary proceeding against Patriarch Stakeholders to include mediation information — not the Funds. But Patriarch argues the Funds forfeited confidentiality because they failed to object to the amended complaint. The Bankruptcy Court granted Patriarch's motion to strike the parts of the amended complaint that revealed mediation information and required the noteholder to amend. And when amendment was insufficient, the Bankruptcy Court decided the appropriate remedy was further amendment, rather than "sweep away the [confidentiality] rule's protections." No. 20-ap-50534, Bankr. Ct. Dkt. No. 440 (Bankr. D. Del. Sept. 7, 2023). Again in the context of the attorney-client privilege, our case law stresses that "waiver . . . is not a punitive measure, so courts do not imply a broader waiver than necessary to ensure that all parties are treated fairly." In re Teleglobe, 493 F.3d at 361. Courts will only broaden a waiver to a party's selective disclosure as "necessary to eliminate [an] advantage." Id.; see also Westinghouse, 951 F.2d at 1426 n.12 ("[T]he privilege is waived only as to those communications actually disclosed, unless a partial waiver would be unfair to the party's adversary."). Patriarch fails to identify the discrete advantage that Debtors obtained by the relatively brief inclusion of this information in the noteholder's amendment complaint and the Bankruptcy Court eliminated any purported advantage by striking the portions of the amended complaint. We perceive no abuse of discretion in the Bankruptcy Court's measured decision to police the inclusion of mediation information without destroying the confidentiality of all mediation information.

B.

We also perceive no abuse of discretion in the Bankruptcy Court's decision not to lift the confidentiality rule.[8] The local Bankruptcy Rules provide that "[t]he application of these Local Rules in any case or proceeding may be modified by the Court in the interest of justice." Del. Bankr. Loc. R. 1001-1(c) (2019). In deciding whether to permit the use of confidential mediation communications, some of our sister Courts of Appeals have held that the party seeking disclosure must "demonstrate (1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality." In re Teligent, Inc., 640 F.3d 53, 58 (2d Cir. 2011); see also In re Anonymous, 283 F.3d 627, 636-37 (4th Cir. 2002) (holding that "it is necessary to examine the relevant interests protected by non-disclosure," the "public interest in protecting the confidentiality of the settlement process and the countervailing interests, such as the right to every person's evidence"). One Court of Appeals has held that "the balance between these interests is best resolved by disallowing disclosure unless the party seeking such disclosure can demonstrate that 'manifest injustice' will result from non-disclosure." In re Anonymous, 283 F.3d at 637. When considering whether to make an exception to the application of Local Appellate Rule 33.5 — a mediation confidentiality rule similar in language to Local Bankruptcy Rule 9019-5(d) — this Court considered whether the plain text of the

---

[8] When considering statutes that permit lower courts to take actions in the "interest of justice," we generally review for abuse of discretion. See, e.g., United States v. Sheppard, 17 F.4th 449, 455 (3d Cir. 2021); Danzinger & De Llano, LLP v. Morgan Verkamp LLC, 948, F.3d 124, 132 (3d Cir. 2020).

12

confidentiality rule contemplated any exceptions, the purposes the rule was meant to serve, and the parties' reliance interests. See Beazer E., Inc. v. Mead Corp., 412 F.3d 429, 434-35 (3d Cir. 2005).

The Bankruptcy Court balanced similar interests in its decision not to lift the confidentiality rule in the interest of justice and we hold that there was no abuse of discretion. The Bankruptcy Court considered the "integrity of the mediation process," the "expectations of all parties which included other[ parties]," and potential for frivolous litigation resulting from "unhappy mediation participants whose offers were not accepted." App. 185. The District Court elaborated on this balancing by applying the factors considered by other Courts of Appeals and assuming that Patriarch had a special need for the information. It held that there resulted no unfairness as all parties knew of the confidential nature of mediation when entering and there exists a significant public interest in maintaining the confidentiality of settlement and mediation discussions. See Beazer, 412 F.3d at 435. We hold that there was no abuse of discretion in making this determination.

## IV.

For the foregoing reasons, we will affirm the District Court's order affirming the Bankruptcy Court's order striking Patriarch administrative expense claim.